**SUBURBAN TRANSIT CORP.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,**

United Transportation Union, Lodge
1589, Intervenor.

No. 75–1809.

United States Court of Appeals,
Third Circuit.

Argued April 6, 1976.

Decided June 22, 1976.

Alfred J. Hill, Wilentz, Goldman & Spitzer, Perth Amboy, N. J., for Suburban Transit Corp.

Paul J. Spielberg, John G. Elligers, John S. Irving, Elliott Moore, Washington, D. C., for N. L. R. B.

Mirkin, Barre, Saltzstein & Gordon, Robert M. Saltzstein, Great Neck, N. Y., Robert M. Ziskin, for United Transportation Union, Lodge 1589.

Howard E. Perlstein, N. L. R. B., Washington, D. C., for respondent.

Before GIBBONS, BIGGS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case comes before this court upon a petition of Suburban Transit Corporation ("Suburban") to review and set aside a Supplemental Decision and Order of the National Labor Relations Board finding Suburban to have violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3). *Suburban Transit Corp.*, 218 N.L.R.B. No. 185 (1975). A cross-application for enforcement of its order has been filed by the Board. The United Transportation Union, Lodge No. 1589, ("UTU") has intervened in support of Suburban's petition. We will grant the petition to review and set aside the Board's order and deny the cross-application for enforcement.[1]

In a prior proceeding, the Board found that Suburban had engaged in unfair labor practices in violation of sections 8(a)(1) and (2) of the National Labor Relations Act by bargaining and entering into a renewal of a collective bargaining agreement with the UTU when a question concerning representation had been raised by a decertification petition filed by certain employees and by a representation petition filed by the rival Teamsters Local No. 701.[2] *Suburban Transit Corp.*, 203 N.L.R.B. 465 (1973). Suburban was also found to have violated sections 8(a)(1) and (3) of the Act because the agreement contained a union-security provision. Finally, the Board held that Suburban had further violated sections 8(a)(1) and (3) by discharging and refusing to reinstate certain employees who had engaged in a strike to protest, in part, the execution of the collective bargaining contract between Suburban and the UTU. Suburban was ordered to withdraw and withhold recognition from the UTU until it was certified as the bargaining representative of Suburban's employees, to offer full reinstatement to the discharged employees and to make them whole for any losses suffered as a result of the discharge.

In *Suburban Transit Corp. v. NLRB*, 499 F.2d 78 (3d Cir.), *cert. denied*, 419 U.S. 1089, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), this court denied enforcement to the part of the Board's order that held Suburban to have violated sections 8(a)(1), (2) and (3) by bargaining and entering into the collective bargaining agreement with the UTU. We stated that the Board's decision on these charges, which relied on *Midwest Piping &*

---

1. This court has jurisdiction pursuant to sections 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. §§ 160(e) and (f).

2. We have reviewed in detail the facts underlying the Board's unfair labor practice charges against Suburban in *Suburban Transit Corp. v. NLRB*, 499 F.2d 78 (3d Cir.), *cert. denied*, 419 U.S. 1089, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), and we need not restate those facts here.

*Supply Co.,* 63 N.L.R.B. 1060 (1945), conflicted with "our decision in *NLRB v. Swift & Co.,* 294 F.2d 285 (3d Cir. 1961), where this court held that mere filing of a representation petition by a competing union does not create a real question of representation so as to prevent an employer from entering into an agreement with the previously certified union." *Id.* at 82. Therefore, the Board's finding that a real question of representation existed at the time of the execution of the agreement between Suburban and the UTU was not supported by substantial evidence and Suburban had not committed an unfair labor practice in executing that contract. The court also set aside the Board's determination that Suburban had violated sections 8(a)(1) and (3) by discharging the striking employees because that finding had been grounded on the Board's erroneous view that the strike was a protected unfair labor practice strike. However, we remanded the case to the Board for a "determination as to whether the strike was protected activity in light of Article 13 of the bargaining agreement." *Id.* at 83.

On June 30, 1975, the Board issued its Supplemental Decision and Order pursuant to the mandate of our remand and again found Suburban to have violated sections 8(a)(1) and (3) by discharging the striking employees. The Board concluded that the employees striking to protest the signing of the collective bargaining agreement were engaged in protected concerted activity

within the meaning of section 7 of the National Labor Relations Act, 29 U.S.C. § 157, and that nothing in the agreement could reasonably be construed as an intended waiver of their rights to take such action.[3] This petition for review and cross-application for enforcement followed.

■ The only question presented by the petition and cross-application *sub judice* is whether the Suburban-UTU collective bargaining agreement expressly or impliedly prohibited the strike by the Suburban employees.[4] Although section 7 of the National Labor Relations Act does guarantee employees the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," 29 U.S.C. § 157, it is well settled that strikes carried out in violation of a no-strike provision in a collective bargaining agreement are not afforded the protection of section 7 and that a discharge of employees who engage in such strikes does not constitute an unfair labor practice. *Food Fair Stores, Inc. v. NLRB,* 491 F.2d 388, 395 (3d Cir. 1974). Of course, "[w]hether a particular collective bargaining agreement includes a waiver of the employees' right to strike, and the extent of any such waiver, 'turns upon the proper interpretation of the particular contract . . . [which] must be read us a whole and in light of the law relating to it when made.'" *Id., quoting Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 279, 76 S.Ct. 349, 100 L.Ed. 309 (1956). In our view, Article

**3.** The Board also stated that the decertification and representation petitions filed in 1971 were "still on file and remain viable" and that it is not precluded from directing an election on the basis of those petitions. We need not and do not here consider the propriety of the Board's opinion as to the viability of the 1971 petitions. Cf. *Boire v. Greyhound Corp.,* 376 U.S. 473, 476–77, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); *International Union of Elec., Radio & Machine Workers v. NLRB,* 140 U.S.App.D.C. 199, 434 F.2d 473, 482 (1970); *Daniel Constr. Co. v. NLRB,* 341 F.2d 805, 809–10 (4th Cir.), cert. denied, 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965).

**4.** After it had determined that the employees' strike was not barred by the collective bargaining agreement, the Board went on to express

reservations on whether the bargaining representative could ever waive the employees' rights to strike in protest to the execution of a collective bargaining contract between the union and the employer. Despite these statements in the Board's opinion, we were advised by the Board at oral argument that the only question it had determined was whether the instant strike was prohibited by Article 13F, that it considers to be dicta any language in its opinion dealing with matters other than the interpretation of the particular contract that was before it, and that it would not argue before this court that a union could never waive the employees' rights to strike under the circumstances presented by this case. We therefore need not and do not consider this question.

13 of the Suburban-UTU collective bargaining contract contains a waiver of the employee's right to strike in protest to the execution of the Suburban-UTU agreement, and consequently, the Board's finding that Suburban had violated sections 8(a)(*1*) and (3) in discharging the striking employees is not supported by substantial evidence.

Article 13 of the collective bargaining contract establishes a three- or four-step procedure, the last stage of which is binding arbitration, for the resolution of grievances that arise "for any reason."[5] Subparagraph F of Article 13 prohibits strikes while a dispute is pending under the grievance-arbitration mechanism:

F. Recourse to outside tribunals will not be made by either party until the Grand Lodge of the Union has been advised and given a reasonable opportunity to intervene and dispose of or adjust the situation as the case may be. *This, with the understanding that there shall be no authorized strike during such period the dispute is pending under the discussion with either the local lodge or the Grand Lodge.* (emphasis added).

Despite the apparent breadth of the no-strike clause contained in Article 13F, the Board refused to construe it to prohibit the strike by the Suburban employees primarily because it concluded that the dispute which precipitated the strike could not be arbitrated under Article 13. The Board cited two reasons for its conclusion on the nonarbitrability of the employees' dispute: first, Article 13 was available only to resolve grievances "arising between Suburban and the Union" while the dispute here was between the employees and the UTU;[6] second, the employees' protest to the signing of the collective bargaining agreement was not a "grievance" under the collective bargaining agreement.

■ While we agree that a "no-strike obligation is as wide as, but no wider than the contractual arbitration undertaking of the parties,"[7] we disagree that the Suburban employees' dispute was not arbitrable under Article 13. The employees' protest to

**5.** Article 13 reads as follows:

### ARTICLE 13
#### Discipline and Investigation

Section 1. If a grievance arises for any reason, and [sic] effort will be made to handle it in the simplist [sic] and most direct manner pursuant to the following procedure:

A. The aggrieved employee, together with the representative of the Union, shall discuss the matter with the immediate supervisor concerned within three days after the date upon which the complaint arises. If the dispute is not adjusted to the satisfaction of both parties, then

B. The matter may be handled by the Grievance Committee and brought to the attention of the president of Suburban or his authorized deputy;

C. If the dispute is not adjusted to the satisfaction of the Committee, assistance of a Grand Lodge officer may be requested;

D. In the event a grievance cannot be settled between the officers of Suburban and the officers of the International Union the dispute will be presented to an arbitrator selected through the rules of the New Jersey State Board of Mediation. The determination of this arbitrator shall be final and binding on both parties. The cost will be shared equally by the Company and the Union.

E. If an employee does not file his complaint with the management of Suburban within three days as provided above, the management reserves the right to reject the grievance as it so desires.

F. Recourse to outside tribunals will not be made by either party until the Grand Lodge of the Union has been advised and given a reasonable opportunity to intervene and dispose of or adjust the situation as the case may be. This, with the understanding that there shall be no authorized strike during such period the dispute is pending under the discussion with either the local lodge or the Grand Lodge.

App. at 329a–30a.

**6.** The Board limited Article 13 to grievances "arising between Suburban and the Union" because of the preamble to the contract, which states that the purpose of the agreement is "to establish a plan for the prompt adjustment of grievances and all other disputes arising between Suburban and the Union." *But see* note 10 *infra.*

**7.** *Island Creek Coal Co. v. UMW,* 507 F.2d 650, 654 (3d Cir.), *cert. denied,* 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975); *see Gateway Coal v. UMW,* 414 U.S. 368, 382, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Parade Pub., Inc. v. Philadelphia Mailers Local 14,* 459 F.2d 369, 374 (3d Cir. 1972).

the execution of the collective bargaining agreement was directed against *both* Suburban and the UTU. It was a dispute about whether Suburban had a valid contract with the UTU.[8] Since we construe the term "Union" as used in the agreement to include both the formal organization known as the UTU and the individual Suburban employees which the UTU represents,[9] the employees' dispute was in fact one "arising between Suburban and the Union," and thus was subject to resolution under Article 13's grievance-arbitration procedure.[10] A construction of Article 13 to preclude arbitration of disputes between individual employees and Suburban would be contrary to the intent of the parties, to common sense and to the presumption in favor of arbitration of labor disputes.[11]

■ We also disagree with the Board's determination that the employees' protest was not a "grievance" within the meaning of Article 13. On its face, Article 13 appears to be sufficiently broad to encompass the instant dispute. It expressly applies to grievances that arise "for any reason." In addition, the preamble to the contract states that the "purpose of this agreement is . . . to establish a plan for the prompt adjustment of grievances and *all other disputes* arising between Suburban and the Union." (emphasis added). The Board concluded that the employees' dispute here was not within Article 13's purview apparently because it feared that the UTU might not adequately represent the employees' interest during the grievance arbitration proceedings.[12] However, there is no evidence in the record that the UTU has ever failed to provide the Suburban employees with full and fair representation. Indeed, in the instant case, the UTU appeared

---

**8.** Even the Board, in its brief, characterizes the strike as one "to protest the Company's execution of a collective bargaining agreement with the Union." Brief of the National Labor Relations Board at 2.

**9.** The preamble to the agreement provides:
  This Agreement made . . . by and between Suburban Transit Corp. of New Brunswick, New Jersey, . . . and the United Transportation Union, Lodge No. 1589, hereinafter referred to as the Union, . . . said *Union contracting for and on behalf of itself and the motor coach operators, hereinafter referred to as Operators of Suburban.*

  .  .  .  .  .

  Whereas, *the Union* has represented that it *has been designated as the duly authorized agent for the purpose of collective bargaining by a majority of Suburban's motor coach operators,* . . . . .

  .  .  .  .  .

  Suburban recognizes *the United Transportation Union as the sole bargaining agent for its employees* and agrees to deal with the duly accredited representatives of said Union, as hereinafter provided. . . .
  App. at 313a–14a. (emphasis added). *See also Eazor Express, Inc. v. International Bhd. of Teamsters,* 520 F.2d 951, 960–61 (3d Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1149, 47 L.Ed.2d 342, 44 U.S.L.W. 3473 (1976).

**10.** It should be noted that Article 13 is not on its face limited to disputes "arising between Suburban and the Union" but rather concerns grievances that arise "for any reason." The phrase in question appears in the preamble to

the contract and was grafted onto Article 13 by the Board. *See* note 6 *supra.*

**11.** *See, e. g., Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 377, 382, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Controlled Sanitation Corp. v. International Assoc. of Machinists & Aerospace Workers,* 524 F.2d 1324, 1328 (3d Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319, 44 U.S.L.W. 3471 (1976).

**12.** The Board stated:
  Nor could we, in the absence of unmistakable evidence of such intent, infer that the employees' protest to the signing of the Suburban-UTU agreement was a "grievance" under that agreement and their strike action in support of such protest embraced by its no-strike provision. It is apparent that the employees who struck in protest of the agreement were challenging the right of the UTU to continue to represent them for purposes of collective bargaining, and it is contrary to the realities of the situation, if not to human nature, to expect the officials of the UTU, absent a clear and binding promise to do so, to afford them full and fair representation in grievance actions against discipline imposed upon them by Respondent for their protests. For the UTU's interests were closely aligned with those of the Respondent, and against those of the striking employees.
  App. at 115a.

on behalf of the striking employees at a preliminary hearing, requested an appeal from Suburban's decision to discharge seventeen of the nineteen striking employees, filed grievances on behalf of the striking employees pursuant to Article 13 and appeared on their behalf at hearings on those grievances. Thus, on the record before us and in light of the federal policy favoring arbitration of labor disputes,[13] we see no justification for departing from the express terms of the collective bargaining contract.

[7] One final reason put forth by the Board in support of its conclusion that the no-strike clause of subparagraph F did not prohibit the Suburban employees' strike was that Article 13F, by its terms, proscribes only "authorized strikes" while the instant strike was unauthorized. In our view, the Board's argument is mere sophistry. The no-strike obligations in the collective bargaining agreement were binding on the individual union members on whose behalf the union signed the agreement, as well as on the union. *See Eazor Express, Inc. v. International Bhd. of Teamsters,* 520 F.2d 951, 960–61 (3d Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1149, 47 L.Ed.2d 342, 44 U.S.L.W. 3473 (1976). In any event, as recited above, we would have no difficulty implying an obligation on the part of Suburban's employees not to strike over, but rather to arbitrate, the dispute involved here. *See Gateway Coal Co. v. United Mine Workers, supra* 414 U.S. at 381–82, 94 S.Ct. 629; *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 105, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).[14]

13. *See Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 377–78, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 251, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *United Steelworkers of America v. NLRB,* 530 F.2d 266, 275 (3d Cir. 1976) (cases and commentary cited therein). The Supreme Court in *Gateway, supra,* quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), stated:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpreta-

For the reasons set forth above, the Board's order finding Suburban to have violated sections 8(a)(1) and (3) of the National Labor Relations Act by discharging employees striking to protest the execution of the Suburban-UTU agreement will be set aside, and the Board's cross-application for enforcement of its order will be denied.

tion that covers the asserted dispute. Doubts should be resolved in favor of coverage."

14. In closing, we feel constrained to comment that in our view the Board's supplemental decision was a thinly disguised attempt to circumvent *NLRB v. Swift & Co.,* 294 F.2d 285 (3d Cir. 1961), a decision with which the Board apparently continues to disagree. App. at 116a–17a & n. 18.