**FEDERAL LEASING CORPORATION**

v.

**ROUTE 202 CORPORATION, INC., Individually, and Filippo Lionti and Carmela Lionti, Individually, jointly, severally or in the alternative.**

**Civ. A. No. 78–2749.**

United States District Court,
E. D. Pennsylvania.

Oct. 14, 1981.

Barbara L. Farley, Philadelphia, Pa., for plaintiff.

Alexander Zdrok, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, Federal Leasing Corporation ("F.L.C.") brought this action against defendants Route 202 Corporation ("Rt. 202") and Filippo and Carmela Lionti, alleging that Rt. 202 had defaulted under the terms of a five year lease covering restaurant equipment entered into by F.L.C. and Rt. 202, the obligations under the lease having been guaranteed by Filippo and Carmela. Defendants stopped making the monthly payments required by the terms of the lease in August 1978. Plaintiffs in this action seek judgment for the balance of the payments and the additional amounts due under the terms of the lease.

Defendants claim that they are illiterate and did not understand the documents they signed or the extent of their personal liability. Defendants also claim that they understood that they were entering into a contract to purchase the restaurant equipment and that they were not aware that the documents provided for a lease of the equipment. In addition, defendants filed a counterclaim alleging a novation of the con-

tract reducing the monthly payments, alleging a violation of the Truth in Lending Laws, alleging that the contract was usurious and asking damages in excess of $10,000.

The action was tried without a jury for two days commencing on September 21, 1981. On the basis of the evidence presented at trial, the Court has determined that it must enter judgment for the plaintiff and against the defendants in the amount of $60,727.06 and for the plaintiff on the counterclaims.

Filippo Lionti, a stonemason and the owner of a construction company, first came to the United States from Italy in 1962. His wife, Carmela, and daughter, Gina, also arrived here that same year. Although Filippo and Carmela were unable to read and write the English language, by the early 1970's they had acquired two houses in Delaware and a tract of land in Chadds Ford, Pennsylvania. By mid-1976 they had begun the construction of a restaurant on the Chadds Ford site. The construction was funded by a $200,000 loan from the First Mortgage Company of Pennsylvania and secured by mortgages on the Chadds Ford Property and the houses in Delaware.

Filippo and Carmela relied heavily on their daughter, Gina, who attended school in this country, to handle their business affairs. Gina, who is now 29 years of age, can read and write English and demonstrated her ability to do so when on the witness stand she read selected portions of the lease. With her assistance, Filippo and Carmela have been able to complete many financial transactions, such as loans, mortgages and real estate settlements.

In June or July of 1976, Filippo and Carmela contacted Joseph Caldwell of Design by Caldwell to design a kitchen for the restaurant in Chadds Ford. Caldwell submitted a total price of $67,500 which included a charge of $37,500 for the kitchen equipment. Filippo and Carmela wished to finance the equipment costs and Caldwell called in F.L.C., an equipment leasing company in East Orange, New Jersey.

In early August 1976, Mr. Leon Godfrey, a vice-president of F.L.C. met Filippo at the Chadds Ford construction site. Godfrey was introduced to Gina by Filippo and was told that Gina would provide the necessary financial information about Filippo, Carmela and Rt. 202, the corporation organized by the Liontis to own and operate the restaurant.

In the course of his initial contacts with Filippo and Gina, Mr. Godfrey explained that F.L.C. would require a personal guarantee from Filippo and Carmela secured by second mortgages on the houses they owned in Delaware.

On September 14, 1976, Mr. Godfrey met with Mr. Caldwell, Filippo, Carmela and Gina at the Lionti's home. During the course of the meeting, which lasted approximately 45 minutes, various documents, including the lease, a personal guarantee and mortgages on the houses in Delaware, were explained by Mr. Godfrey to Filippo and Carmela. Gina then spoke to her parents in Italian and they then signed all the documents.

In the course of the ensuing week, F.L.C. discovered that some of the documents had not been executed in the correct name of the Lionti's corporation and Mr. Godfrey returned to the Lionti's home on September 28, 1976 and had the corrected documents signed by Filippo and Carmela. At that time, F.L.C. had purchased the restaurant equipment from Caldwell and the equipment was delivered to the restaurant.

Under the terms of the lease Rt. 202 was obligated to make sixty payments in the amount of $993.75 a month; $937.50 was the monthly rental, and $56.25 was sales tax. The defendants were fairly current in their payments for approximately one year but then began to fall behind. Plaintiffs, in an effort to bring up the arrearages, began to accept weekly payments.

In July 1978, Filippo and Carmela were notified by letter that plaintiffs would no longer tolerate the default. Subsequent to the letter, Mr. Godfrey attempted to remove the equipment from the restaurant but was turned away.

In September 1978, a fire consumed the restaurant and equipment. Although paragraph 18 of the lease agreement required defendants to insure the equipment, naming F.L.C. as the loss payee, no such policy was in effect at the time of the fire and plaintiffs did not receive any compensation for the loss of the equipment.

Filippo and Carmela never remedied their default under the terms of the lease. They stopped making payments in August of 1978. Plaintiff's records and the testimony of Mr. Godfrey show that defendants owe a balance of $40,311.58 in rent payments, a balance of $2,418.69 in tax payments and $984.48 in late charges.

The lease contract provides for the payment of interest on the outstanding rental from the time the installment came due until the time of payment at the highest rate allowable by law. The contract expressly provides that its terms are to be construed in accordance with the law of the state of New Jersey. The maximum interest rate allowable under the law of New Jersey at the time of the making of the lease and at the time of the default was 8%. The amount of interest owed is $5,644.81. Under the terms of the contract plaintiff is also entitled to recover $1,152.00 paid to insure the houses in Delaware which were mortgaged to secure the defendants' obligations. In addition, plaintiff is entitled under the terms of the lease to recover reasonable attorney's fees which the plaintiff expended in connection with this litigation and in connection with the litigation in Delaware foreclosing on the mortgages given by the defendants as security. The Court finds that the plaintiff expended $10,215.50 in reasonable attorney's fees.

Although Filippo and Carmela testified that at the time they signed the lease they believed they were buying the equipment and not leasing it, they, and their daughter Gina, testified that they knew they were required to make monthly payments of $993.75 for a period of five years. They further testified that they understood that F.L.C. would have a lien on the restaurant equipment but that they did not understand that they were giving F.L.C. second mortgages on their houses in Delaware as security.

The plaintiff introduced into evidence a certified copy of Judge Longobardi's June 17, 1980 opinion in *Federal Leasing Corporation v. Filippo and Carmela Lionti*, Delaware Superior Court, C.A. No. 78L–Au–37, together with certified copies of the complaint, answer and docket entries in that action. The action in the Superior Court of Delaware was brought by F.L.C. foreclosing on the mortgages executed by Filippo and Carmela in the lease transaction. As stated in Judge Longobardi's opinion:

> Because of other interrelated actions filed in Pennsylvania, this non-jury trial was confined only to resolving issues concerning the execution of the mortgages. Specifically, the defendants seek to dismiss the foreclosure action and to vacate the mortgage. In their answer, they allege the execution of the mortgages was fraudulently obtained because the Plaintiff knew they "could not effectively read English and had to rely on Plaintiff's representations for information" relating to the terms of the instruments and because Plaintiff misrepresented the "nature of the instrument" which they signed.

In his findings of fact and conclusions of law Judge Longobardi found as follows:

> In connection with Defendants' allegation that Plaintiff, through its agent, Mr. Godfrey, misrepresented the "nature of the instrument" which they signed, the Court finds no credible evidence in the record to support it. There are references in the record to Mr. Godfrey merely "flipping" the papers from the bottom for their signatures. If that was offered to suggest he "slipped" the mortgages into the other financing documents so as to conceal their identity, that is rejected. The Court finds that Mr. Godfrey explained each document to the Liontis and to Gina Lionti who must be construed as their agent, selected by them to assist them in these business matters. She assisted them in these and in many other

business matters and was treated by all parties as their agent. That is conclusively shown by the testimony regarding the Liontis' transaction with governmental agencies in Pennsylvania during the proposed construction interval, their dealing with Pileggi and FMCP and finally with Caldwell and Godfrey. Plaintiff's reliance on her to communicate fully with her parents was reasonable under the circumstances. In connection with Defendants' allegation that Plaintiff fraudulently obtained their signatures on the mortgages because Plaintiff knew they could not effectively read English and had to rely on Plaintiff's representations for information regarding the mortgages, that also is rejected. Mr. Lionti demonstrated during the course of the trial that he had a much better understanding of English than he would have the Court believe. The Court noted during direct examination that he frequently understood questions even before his daughter interpreted them. He anticipated the completion of the questions and even offered responsive answers before the question was explained. On cross examination, attorney for the Plaintiff, in an obvious tactic to seize upon what had been obvious, started asking innocuous but relevant questions and Lionti answered them in English without the aid of his daughter as interpreter.

\* \* \* \* \* \*

The Court finds the mortgages were not fraudulently obtained, that the Liontis knew what they were signing and knew the consequences of their signature to such documents. And further, there was no misrepresentation by Godfrey concerning the "nature of the instruments" they signed or the legal consequences of the execution of such documents.

In this action the plaintiffs contend the Delaware decision is res judicata of the issues of whether the defendants understood the documents they signed and the extent of their personal liability and whether the plaintiff committed fraud or misrepresentation.

■ The res judicata effect of a judgment is determined by the law of the state in which the judgment was rendered, in this case Delaware. *Riverside Memorial Mausoleum v. Umet Trust*, 581 F.2d 62, 66 (3d Cir. 1978); *Clyde v. Hodge*, 413 F.2d 48, 50 (3d Cir. 1969). Delaware courts have employed a five-pronged test for the applicability of the doctrine of res judicata, requiring that: (a) the original court had jurisdiction; (b) the parties in the original action are the same as in the case at bar; (c) the issues necessarily decided in the prior action were the same as those raised in the case at bar; (d) the issues in the prior action were decided against the party who seeks to litigate the issue and; (e) the decree rendered in the prior action is a final decree. *Rumsey Electric Co. v. University of Delaware*, Del. Super., 334 A.2d 226, 228 (1975) *aff'd*, Del., 358 A.2d 712 (1976); *Epstein v. Chatham Park*, 52 Del. 56, 153 A.2d 180 (1959).

■ There is no question that the findings of the Delaware court are res judicata of the fact: that the mortgages were not fraudulently obtained; that Filippo and Carmela knew that they were signing mortgages covering their houses in Delaware and; that there was no misrepresentation concerning the nature of the mortgage documents. Although there may be a question as to whether the findings of the Delaware Superior Court are also res judicata as to the lease transaction, this Court, in an abundance of caution, heard the testimony of the parties concerning the execution of the lease and on the basis of the evidence presented we find that Filippo and Carmela understood their obligations under the lease.

■ The Court also finds that there is no credible evidence of fraud on the part of the plaintiffs nor any evidence that the lease document was represented to be anything other than a lease. Godfrey explained the significance of each of the documents presented to and signed by Filippo and Carmela. Filippo, Carmela and Gina testified that they always understood that

under the terms of the contract they were obligated to pay a total of $993.75 per month for sixty months. In addition, the words lease, lessee, lessor, and rent appear throughout the lease instrument and were clearly comprehensible to Gina Lionti.

■ Under the principles of general contract law and the law of both Pennsylvania and New Jersey, the defendants, having knowingly executed the lease and accompanying documents without any fraud or misrepresentation on the part of the plaintiff, and having understood that they were obligating themselves to pay $993.75 per month for sixty months, cannot now avoid their obligations by asserting that neither they nor Gina read the documents before signing. *Farris Engineering Corporation v. Service Bureau Corporation*, 276 F.Supp. 643, 645 (D.N.J.1967), *aff'd*, 406 F.2d 519 (3d Cir. 1969); *National State Bank of Newark v. Terminal Construction Corporation*, 217 F.Supp. 341, 345 (D.N.J.1963), *affd.* 328 F.2d 315 (3d Cir. 1964); *Fried v. Feola*, 129 F.Supp. 699, 703 (W.D.Pa.1954); *Estate of Brant*, 463 Pa. 230, 235–36, 344 A.2d 806, 809 (1975); *Abel Holding Co. v. American District Telegraph Company*, 138 N.J.Super. 137, 157, 350 A.2d 292, 303 (1975), *aff'd*, 147 N.J.Super. 263, 371 A.2d 111 (1977); *Thrasher v. Rothrock*, 377 Pa. 562, 105 A.2d 600, 604 (1954).

■ Although the defendants filed a counterclaim alleging novation, usury, and violation of the Truth in Lending Laws, no credible evidence was presented in substantiation of such claims.

■ As heretofore stated, the Court finds that the lease and the guarantee entered into by Filippo and Carmela are enforceable contracts, that defendants defaulted under the terms of these instruments, and that the plaintiff is entitled to a verdict in the amount of $60,727.06, and is also entitled to a verdict on the defendants' counterclaims. This memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). An appropriate order will accordingly be entered.