755 F.2d 330
 102 Lab.Cas. P 11,389, 6 Employee Benefits Ca 1161
 MICHOTA, Bruno; Walter Lemke; Abraham Geliman; Lawrence
Balback; Bolly Bonk; William Dunne; Bernard Kosciewicz;
Siegfried Milchram; Howard Sears; Stephen Gardzinski;
Harry Wolf; Bruno Dziedzic; William Riedel; Salvatore
Guarneri; Samuel Monto; Fermin Loma; Vincent Sadowski;
Stanley Kiesnowski; Anthony Bellina; Frank Pavolonis;
William Roesch; Michael Duda; Edward Strittmatter;
Frederick Hubner; Peter Rudy; Harold Wanthouse; Joseph
Duffy; Joseph Coyle and Grace Green (Widow of Harold Green, Deceased)
v.
ANHEUSER-BUSCH, INCORPORATED (BUDWEISER); P. Ballantine &
Sons; Pabst Brewing Company; Falstaff Brewing Corporation;
Investors Funding Corporation; Rheingold Breweries, Inc.;
the New Jersey Brewery Employees Pension Trust Fund; Henry
T. Hamilton; Herbert V. Johnson; Frank A. Jackiewicz;
Frank Sullivan; Herbert Heilmann, Jr.; Henry Tchorzewski;
Benno Merker and Arthur Spinello as Trustees of the New
Jersey Brewery Employees Pension Trust Fund; the Pension
Benefit Guaranty Corporation as Trustee for the New Jersey
Brewery Employees Pension Fund. (6 Cases)
PENSION BENEFIT GUARANTY CORPORATION, Defendant-Third-Party Plaintiff,
v.
CHOCK FULL O'NUTS CORPORATION Third-Party Defendant. (6 Cases)
CHOCK FULL O'NUTS CORPORATION, Third-Party Defendant and
Fourth-Party Plaintiff,
v.
Henry T. HAMILTON, Herbert V. Johnson, Frank A. Jackiewicz,
Frank Sullivan, Herbert Heilmann, Jr., Henry Tchorzewski,
Benno Merker, Arthur Spinello, Herb Poeschla, Howard Pines,
William Griffin, Henry Frank, Henry Webber, Rocco Marsano,
Joseph Fitzsimmons, Nicholas Raimo, Thomas King and John
Ostach As Trustees of the New Jersey Brewery Employees,
Fourth-Party Defendants. (6 Cases)
ADAMS, Gustav A., Andrew F. Dopkins, and Robert Malcolm,
deceased by his Executrix Lillian Malcolm
v.
TRUSTEES OF the NEW JERSEY BREWERY EMPLOYEES' PENSION TRUST
FUND, LOCAL UNION 843, I.B. OF T., Falstaff Brewing
Corporation, and Joseph M. Byrne Co., a corporation of the
State of New Jersey. (6 Cases)
Appeal of ANHEUSER-BUSCH, INC. in Nos. 84-5137 and 84-5179.
Appeal of PABST BREWING COMPANY in Nos. 84-5144 and 84-5180.
Appeal of CHOCK FULL O'NUTS CORPORATION, Third-Party
Defendant in No. 84-5181.
Appeal of PENSION BENEFIT GUARANTY CORPORATION (THE "PBGC")
 in No. 84-5182.
 Nos. 84-5137, 84-5144, 84-5179, 84-5180, 84-5181, and 84-5182.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1984.
Decided Feb. 22, 1985.
Rehearing and Rehearing In Banc Denied March 22, 1985.
 
 Edward F. Ryan, Rosemary A. Hall (argued), Carpenter, Bennett & Morrissey, Newark, N.J., for Anheuser-Busch, Inc., appellant in Nos. 84-5137 and 84-5179.
 John J. Rizzo (argued), Stryker, Tams & Dill, Newark, N.J., for Pabst Brewing Co., appellant in Nos. 84-5144 and 84-5180; Martin I. Shelton, Bruce M. Stachenfeld, New York City, of counsel.
 Dean G. Yuzek (argued), Shea & Gould, New York City, Lawrence A. Whipple, Jr., Whipple, Ross & Hirsch, Newark, N.J., for Chock Full O'Nuts, appellant in No. 84-5181, and Rheingold Breweries; Martin I. Shelton, Bruce M. Stachenfeld, New York City, of counsel.
 Henry Rose, Gen. Counsel, James N. Dulcan, Asst. Gen. Counsel, Mitchell L. Strickler, Stephen D. Schreiber (argued), Pension Benefit Guaranty Corp., Legal Dept., Washington, D.C., for Pension Benefit Guaranty Corp., appellant in No. 84-5182.
 Richard K. Coplon (argued), Bernard Hellring, Hellring, Lindeman, Goldstein & Siegal, Newark, N.J., for appellees, Michota, Bruno, et al.
 Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and CAHN, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Chief Judge.
 
 
 1
 The dispositive question in these consolidated appeals is whether, in a class action brought by prospective pensioners under Sections 301 and 302 of the LMRA and Section 502 of ERISA, inclusion of an amendment to a pension fund plan in a ratified collective bargaining agreement provides sufficient notice of the terms of that amendment to prospective pensioners. The district court found that such notice was not sufficient as a matter of law, granted summary judgment for the pensioners against the Pension Benefits Guarantee Corporation ("PBGC") and certified its order as a final judgment under Rule 54(b), F.R.Civ.P. Because we conclude that inclusion of this pension fund amendment in the ratified collective bargaining agreement is sufficient notice to members of the bargaining unit, we reverse the grant of summary judgment and decide no other issues presented for review.
 
 
 2
 For example, presented for our review pursuant to 28 U.S.C. Sec. 1292(b) is whether ERISA Sec. 4064 operates to impose liability retroactively upon employers who withdrew from a pension plan a year and a half before the enactment of ERISA and, if so, whether such application violates the Due Process Clause of the Fifth Amendment. Our certification of this question for review, however, was predicated upon the proper resolution of the notice issue below. Because we are reversing the district court's decision on the question of notice, and because we are uncertain as to what effect, if any, our decision today bears on the question certified under Sec. 1292(b), we remand it to the district court. In conjunction with its resolution of the remaining cross-claim, that court will decide whether to adhere to its original decision on the certified question; any appellate review will follow the entry of a final decision. We turn now to the operative facts of the issues we now decide.
 
 I.
 
 3
 In 1956, Anheuser-Busch, Inc., P. Ballantine & Sons, Liebman Breweries ("Rheingold"), Pabst Brewing Co., and two other corporations not involved here, established the New Jersey Brewery Employees Pension Fund. This fund was administered pursuant to the terms of a pension plan ("Plan") established by the fund trustees. In 1967, due to the declining health of the brewing industry, the participating employers and the brewery employees' bargaining representative (Teamsters Locals 4, 153, and 843) included a resolution in their collective bargaining agreement to incorporate a Partial Termination Clause into the Plan. This clause would determine the benefits of employees whose employer ceased to be a "Participating Employer" under the Plan.
 
 
 4
 After discussing a Partial Termination Clause extensively for three years, in April of 1970 the fund trustees tentatively reached agreement. Their proposed Partial Termination Clause was submitted to the employers and the joint board of the unions, which were then negotiating the 1970 area-wide collective bargaining agreement. These parties included the Partial Termination Clause[1] in the proposed labor agreement submitted to the memberships of Locals 4, 153 and 843 for ratification.
 
 
 5
 In May 1970, the area-wide collective bargaining agreement, which included the Partial Termination Clause, was approved by members of Locals 4, 153 and 843 employed at Pabst, Ballantine and Rheingold by a vote of 1305 (yes) to 168 (no). Appendix at 534. On May 27, 1970 this collective bargaining agreement, which we repeat by way of emphasis included the Partial Termination Clause, was signed by officials of the various companies, the Essex Brewers' Labor Association, the Brewery Workers' Joint Local Board of New Jersey, and Locals 4, 153 and 843. Appendix at 329. On May 28, 1970 the Plan trustees adopted the Partial Termination Clause which was inserted as Article VII in the Plan on the same day.
 
 
 6
 The Ballantine Brewery closed on April 1, 1972. By the terms of the Partial Termination Clause, many Ballantine employees were unable to receive their pension benefits. Appellees brought this action against the employers and the PBGC seeking the protection of pension benefits under the Plan notwithstanding the Partial Termination Clause. The district court certified a class consisting of "all individuals employed by Ballantine with ten or more years of service on April 1, 1972, and whose service credit was eliminated by the partial termination clause." Appendix at 112.
 
 
 7
 In a separate claim, somewhat unrelated to the precise issues before us, in 1973 Budweiser and Pabst withdrew from the Plan and established separate pension funds for their employees, and the last employer in the Plan, Rheingold, withdrew in 1977. The PBGC was appointed as statutory trustee in 1978. In its amended answer to the class claim, the PBGC asserted a cross claim against Anheuser, Pabst, and Rheingold under 29 U.S.C. Sec. 1364 for their statutory share of the liability that the PBGC may incur as a result of the termination of the Plan.
 
 
 8
 In September 1980, the district court found that the Partial Termination Clause was arbitrary and capricious and granted summary judgment for the employees against the PBGC, but found for the defendant employers on all other claims. 526 F.Supp. 299. On appeal, we affirmed the district court's judgment in all respects except for the finding that the Partial Termination Clause was arbitrary and capricious. Adams v. New Jersey Brewery Employees' Pension Trust Fund, 670 F.2d 387, 404 (3d Cir.1982). On this issue, we reversed and found the clause valid, but remanded the case to the district court to determine "whether proper notification of the partial termination clause was required and properly given." Id. at 391.
 
 
 9
 On remand, the district court found that the trustees did not provide adequate notice to the Plan participants and granted the appellee class's motion for summary judgment against the PBGC. The court certified this holding as a final judgment for purposes of appeal under Rule 54(b), F.R.Civ.P. The district court also denied Anheuser's and Pabst's motions for summary judgment on PBGC's cross-claim and granted Anheuser's and Pabst's motions for interlocutory appeal under 28 U.S.C. Sec. 1292(b) on the issues presented therein.
 
 
 10
 The district court found that the trustees of the Plan did not provide the appellees with sufficient written or oral notice of the Partial Termination Clause, and that the clause could therefore not divest them of their pension rights, and granted appellees' summary judgment against the PBGC. It is to the propriety of this decision we now turn.
 
 II.
 
 11
 In reviewing the grant of a summary judgment motion, we must affirm if we determine that there are no disputed issues of material fact and that the plaintiffs are entitled to judgment as a matter of law. Coastal States Gas Corp. v. Department of Energy, 644 F.2d 969, 978-79 (3d Cir.1981). Determining whether, as a matter of law, the appellees were afforded adequate notice of the terms of the Partial Termination Clause implicates the interpretation and application of legal precepts. Therefore, our review is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir.1981). Appellants argue that inclusion of the Partial Termination Clause in the 1970 collective bargaining agreement was sufficient notice to the appellees of the contents of that clause. We agree.
 
 
 12
 Integrity of the collective bargaining process under the National Labor Relations Act is critical to the stability of labor relations. The ability of duly elected bargaining representatives to bargain effectively is dependent in part upon its ability to bind the employees it represents to the terms of a negotiated agreement. In NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), in finding that a union could discipline its members for crossing strike picket lines, the Supreme Court commented on the union's role in the bargaining process:
 
 
 13
 National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions. The policy therefore extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees.... Thus only the union may contract the employee's terms and conditions of employment, and provisions for processing his grievances; the union may even bargain away his right to strike during the contract term, and his right to refuse to cross a lawful picket line. The employee may disagree with many of the union decisions but is bound by them.
 
 
 14
 Id. at 180, 87 S.Ct. at 2006 (footnotes omitted).
 
 
 15
 Following this reasoning, we have twice before held that the individual members of a union are bound by the terms of a no-strike clause in a collective bargaining agreement. Suburban Transit Corp. v. NLRB, 536 F.2d 1018, 1023 (3d Cir.1976); Eazor Express, Inc. v. International Brotherhood of Teamsters, 520 F.2d 951, 960-61 (3d Cir.1975), cert. denied, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342, reh'g denied, 425 U.S. 908, 96 S.Ct. 1502, 47 L.Ed.2d 758 (1976). The clause at issue here is similar to those involved in these cases in that it was part of a collective bargaining agreement. That the subject matter of the clauses differ does not change the binding nature of their application to union members.
 
 
 16
 A necessary corollary to the rule that all terms of a collective bargaining agreement are binding on the individual members of the bargaining unit, is the concept that parties to a valid contract have notice of the terms therein set forth. See, e.g., Federal Leasing Corp. v. Route 202 Corp., 525 F.Supp. 1024, 1029 (E.D.Pa.1981); Farris Engineering Corp. v. Service Bureau Corp., 276 F.Supp. 643, 645 (D.N.J.1967), aff'd, 406 F.2d 519 (3d Cir.1969). Here, there can be no doubt that the union members had such notice of the Partial Termination Clause. The 1967 collective bargaining agreement called for an incorporation of such a clause in the Plan. Such a clause was included verbatim in the 1970 collective bargaining agreement. The 1970 agreement was ratified by union members by a large majority. Those same members may therefore not now assert that they cannot be bound by the terms of that agreement.
 
 
 17
 None of the cases upon which the district court relied concerned an amendment to a pension plan that was included in a collective bargaining agreement and duly ratified. See, e.g., Valle v. Joint Plumbing Industry Board, 623 F.2d 196 (2d Cir.1980); Agro v. Joint Plumbing Industry Board, 623 F.2d 207 (2d Cir.1980); Norton v. I.A.M. National Pension Fund, 553 F.2d 1352 (D.C.Cir.1977); Kosty v. Lewis, 319 F.2d 744 (D.C.Cir.1963), cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). Accordingly, they are not persuasive.
 
 III.
 
 18
 For the above reasons, we conclude that the district court erred in holding that notice of the Partial Termination Clause was inadequate. We hold that there was adequate constructive notice as a matter of law. Accordingly, we will reverse the grant of summary judgment for appellees against PBGC, and will remand the case to the district court for a final determination of the employers' liability on PBGC's cross-claim for any remaining unfunded portions of the Brewery Pension Fund. Because the issue certified under 28 U.S.C. Sec. 1292(b) is necessarily involved in that determination, we decline to decide the interlocutory appeal and remand it for resolution in the proper course of the remaining litigation.
 
 BECKER, Circuit Judge, concurring:
 
 19
 While I join in the opinion and judgment of the court, I write separately to express my belief that our holding--that the inclusion of an amendment to a pension plan in the collective bargaining agreement constitutes constructive notice to the beneficiaries of the pension trust--might not apply in other factual situations.
 
 
 20
 A helpful way of framing the issue in this case is to ask whether the pension trustees violated their fiduciary duty to the beneficiaries of the fund by relying on the inclusion of the Partial Termination Clause ("PTC") in the collective bargaining agreement to provide the beneficiaries with notice of this detrimental change in the plan. The trustees had a "fiduciary duty to preserve the financial security of [the] pension fund and to apply the assets of the fund for the benefit of the employees to the greatest extent possible." Adams v. New Jersey Brewery Employees' Pension Trust Fund, Local Union 843, 670 F.2d 387, 397 (3d Cir.1982). Because they were balancing conflicting obligations--between present and future beneficiaries, and between financial security and the payment of benefits--these trustees were obligated to avoid acting in an arbitrary and capricious manner. Id. at 398; see Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 334 (3d Cir.1984).[1]
 
 
 21
 By stating that, because the PTC was "included verbatim in the 1970 collective bargaining agreement" which "was ratified by union members by a large majority[, t]hose same members may therefore not now assert that they cannot be bound by the terms of that agreement," at 336, we have held, in effect, that the trustees did not act arbitrarily when they decided to notify their beneficiaries through the contract and its ratification procedure. I believe that this holding is correct here, where the clause in dispute affected active participants in the collective bargaining process--primarily current employees (and some former employees who had retired no more than ninety days earlier).[2] It is also supported by the fact that these persons had earlier ratified a collective bargaining agreement which put them on notice that a partial termination clause of some sort was in the making. See id.
 
 
 22
 I can, however, posit a set of circumstances where the same result would not follow. For example, if the clause in question operated mainly to the detriment of retired workers, the fact that it was in the collective bargaining contract would not, in my opinion, necessarily constitute adequate notice. Retirees are not employees within the meaning of the National Labor Relations Act, 29 U.S.C. Sec. 151 et seq., and they cannot properly be included in a bargaining unit with active employees. Allied Chemical & Alkali Workers of America, Local 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 172-75, 92 S.Ct. 383, 393-96, 30 L.Ed.2d 341 (1971). Retirees' benefits, moreover, are not a mandatory subject of bargaining, id. at 176-82, 92 S.Ct. at 396-99; consequently, a union is under no statutory duty to bargain for these benefits in negotiations with the employer. Id. at 181 n. 20, 92 S.Ct. at 398 n. 20. A union may, of course, choose to bargain on behalf of retirees, id.; see, e.g., Adams v. Gould Inc., 739 F.2d 858, 861-62 (3d Cir.1984), but, in practical terms, union leaders have little incentive to obtain benefits for former employees at the expense of present workers. As a result, retired workers generally do not participate in the collective bargaining ratification process. To hold retirees automatically bound by a change in the pension trust agreement (for which they are entitled to notice) because it is included in the collective bargaining agreement would, in my view, create problems of extending the notion of constructive notice so far as to be unfair. Moreover, trustees who rely on the ratification process for notice under such circumstances might well be acting in an arbitrary and capricious manner. I therefore join in the opinion on the understanding that it does not extend beyond the facts of this case.[3]
 
 
 
 *
 Honorable Edward N. Cahn of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The Partial Termination Clause included in the 1970 collective bargaining agreement read:
 ARTICLE VII
 DISCONTINUANCE BY AN EMPLOYER
 Section 1. Notwithstanding any other provision of the Plan to the contrary if an Employer ceases to be an Employer as defined herein, all of the Credited Service of its then employees (including its former employees who terminated employment with such Employer within the three month period immediate preceeding the date on which such Employer ceased to be an Employer) shall be cancelled except for the Credited Service of the following employees of the ceased Employer: (a) those Employees who have completed thirty (30) years or more of Credited Service; (b) those employees who have both completed at least ten years (10) of Credited Service and attained age 65; (c) those Employees who have both completed at least fifteen (15) years of Credited Service and attained age 60; (d) those Employees who have completed at least ten (10) years of Credited Service with one or more of the Employers who is remaining as an Employer under the Plan; and (e) those Employees who are placed on the regular employees seniority list of a remaining Employer and accumulate enough Covered Days with such remaining Employer during the one year period commencing on and immediately following the date their Employer ceased to be an Employer to earn at least one-fifth ( 1/5) of a year of Credited Service, excluding for the purpose of this determination all Covered Days with their Employer who ceased to be an Employer and assuming, for the purpose of this determination, that the Covered Days with a remaining single Employer all were earned during one Plan Year. The term employees as used in this Section 1 shall mean persons covered by the current collective bargaining agreements between the Employers and the Unions.
 Section 2. If an Employer ceases to be an Employer as defined herein, the Trustees shall instruct the actuary for the Plan to conduct a valuation of the Plan as of the date such Employer ceased to be an Employer, taking into consideration the total funds available and the actuarial liabilities for benefits accrued by all Employees based on the Credited Service in effect after the cancellation of the Credited Service as defined in Section 1 of this Article VII. Based upon the results of this valuation, the monthly retirement pension payable in accordance with the provisions of Article II, Article III, Article IX and Article X, shall be reduced for all eligible Employees who make application for a pension on or after the date such Employer ceased to be an Employer and for all Employees of the Employer who ceased to be an Employer who made application for retirement within the three month period immediately preceding the date on which such Employer ceased to be an Employer. The reduction in the monthly retirement pension payable referred to in the preceding sentence shall apply uniformly to all Credited Service in effect after the cancellation of Credited Service as defined in Section 1 of this Article VII. This reduction in monthly retirement pensions shall be determined by the actuary of the Plan in such a manner that the rate at which the unfunded accrued liability was being funded according to the actuarial valuation on the July 31 preceding the date such Employer ceased to be an Employer shall be estimated to continue to be the rate at which the unfunded accrued liability is being funded on the day after such Employer ceased to be an Employer.
 Section 3. During the period starting three months prior to the date an Employer ceases to be an Employer and ending with the date that the Trustees approve the reduction in benefits as determined by the actuary for the Plan in accordance with Section 2 of this Article VII, annuities shall not be purchased from any insurance company.
 The payment of pensions which are payable in accordance with the provisions of Article II, Article II [sic], Article IX and Article X to Employees who make application therefore on or after the date an Employer ceased to be an Employer shall be made at such temporary reduced rate as recommended by the Plan actuary during this period described in the preceding sentence. Once the final reduction determined by the actuary for the Plan has been approved by the Trustees, adjustments will be made in the payments received during the period described in the first sentence of this Section 3.
 Section 4. Except for the cancellation of Credited Service described in Section 1 of this Article VII and the reduction in monthly retirement pensions described in Section 2 of this Article VII, the provisions of the Plan shall not be affected by the fact that an Employer has ceased to be an Employer.
 Appendix at 377-80.
 
 
 [1]
 Subsequent to the action of the trustees at issue in this case, Congress codified the fiduciary duty owed by benefit plan fiduciaries in title I of ERISA. See 29 U.S.C. Sec. 1104. Congress also set out detailed requirements for notice to plan beneficiaries of plan provisions and modifications. 29 U.S.C. Secs. 1021-31
 
 
 [2]
 I note my agreement with the district court's conclusion that, in the absence of the actual inclusion of the PTC in the collective bargaining contract, the trustees' reliance on mere oral discussions of the PTC at union meetings would have been insufficient to meet their fiduciary duty. See Appendix at 125a
 
 
 [3]
 Because of my just expressed concern as to the scope of our holding on the notice issue, I feel constrained to note that counsel for the employees represented at oral argument that, prior to the ratification vote, the unions concealed from the employees the fact that the PTC was included in the tentative agreement. Counsel further alleged that the clause was not included in a copy of the contract distributed to union members. These allegations are not touched upon in appellants' briefs, and the record on the point is apparently not developed. I therefore have no knowledge of the validity of the charges, or how much evidence there is to support them. However, because the allegations are offered to undermine the position advanced by appellees (and adopted by the panel) on the question of adequacy of notice, I observe that, if they are true, plaintiffs may not be without a remedy because the allegations raise the possibility that the local unions representing them breached their duty of fair representation
 The requirements of fair representation were summarized by the Supreme Court in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967):
 [T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.
 Id. at 177, 87 S.Ct. at 910. In Deboles v. Trans World Airlines, Inc., 552 F.2d 1005 (3d Cir.1977), we extended the duty of fair representation to union conduct during contract ratification voting, holding that the union leaders must act in good faith with honesty of purpose; they cannot secure the ratification of a contract by misleading their constituents as to its contents. Id. at 1018.
 The fiduciary duties owed by pension trustees to plan beneficiaries are thus manifestly different from the duties owed by union representatives to their constituents. See Rosen v. Hotel and Restaurant Employees & Bartenders Union, 637 F.2d 592, 599-600 & n. 10 (3d Cir.1981) (holding that union has no fiduciary duty to oversee an employer's payments into pension fund but pension trustees have fiduciary duty to oversee such payments and notify employee of employer's non-payment). Our holding that the trustees did not violate their fiduciary duty by relying on the contract ratification process and the incorporation of the PTC in the contract as notice of the change therefore would not, absent some other defense, such as time-bar, appear to bar a suit charging the unions with a breach of their duty of fair representation for actively concealing the existence of the clause in the collective bargaining agreement.