671 A.2d 681

**ERIE INSURANCE EXCHANGE, Appellant,**

v.

**Bryan LAKE, Kevin Stover, Lorraine Stover, William P. Sherman, Executor of the Estate of William W. Sherman, and Ellen D. Sherman, William P. Sherman and Mary J. Sherman, Administrator and Administratrix, Respectively, of the Estates of Jarod S. Sherman and Justin L. Sherman, William P. Sherman, and Mary J. Sherman, Individually, and Joshua Ellis, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1995.

Decided Feb. 23, 1996.

364

John F. Mizner, Erie, Erie Insurance, for appellant.

Joseph E. Buckley, Jr., Brookville, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION*

CAPPY, Justice:

This appeal presents the question of whether Act 78 [1] permits the recision of a policy of automobile insurance on the basis of fraud, where the fraud could not have reasonably been discovered, within the 60 day period after the policy was issued. For the reasons that follow we conclude, with the limited exceptions as set forth herein, that the insurer does not have the ability to rescind the policy of insurance, beyond the 60 day period immediately following issuance of the policy. Accordingly, we affirm the decision of the learned Superior Court.

The catalyst for the present legal action was a fatal automobile accident which occurred on September 23, 1989. Kevin. Stover, while intoxicated, was operating a Ford pick-up truck insured by appellant. The truck collided with a vehicle driven by William Sherman, killing William, his wife Ellen, and two of their three grandchildren; the third grandchild survived, but suffered serious injuries.

The policy of insurance for the truck had been issued by appellant to Bryan Lake, as the alleged owner and sole operator of the vehicle. However, Kevin Stover was the actual owner and operator of the truck. Stover had paid for the truck and at all times had actual possession of the truck. Stover was unable to obtain automobile insurance in his own name. Lake, as Stover's friend, agreed to have the title of the vehicle placed in his name and to add the vehicle to his own policy of insurance with appellant. Stover paid the insurance premiums to Lake in cash; Lake then forwarded the premium to appellant. This scheme had been on-going since 1987, with this truck being the third vehicle insured with appellant, for Stover's exclusive use, but, through the fiction of being titled to Bryan Lake.

1. Act 78 is a comprehensive legislative enactment regulating the writing, cancellation of, or refusal to renew policies of automobile insurance. The Act is found at 40 P.S. § 1008.1 et seq. The Act was promulgated on June 5, 1968, P.L. 140.

Following the collision of September 23, 1989, demands were made by appellees upon appellant pursuant to the policy of insurance for the truck. Appellees' demand for payment under the policy prompted appellant's investigation, which uncovered the fraudulent manner in which the insurance policy had been procured. Appellant then filed the instant complaint for declaratory judgment seeking to void the insurance contract. The parties filed cross-motions for summary judgment before the trial court. The trial court granted summary judgment to appellant, plaintiff below, and denied summary judgment as to appellees, the defendants below.

The trial court, finding fraud in the inducement, held that the insurance contract was void *ab initio*. On appeal to the Superior Court, the decision of the trial court was reversed as to all appellees, except Bryan Lake and Kevin Stover.[2] This Court granted allowance of appeal to once again review the question of recision of an insurance contract in light of the termination provisions of Act 78.

The impetus for resolving this query lies within the legal distinction between cancellation of an insurance policy and recision of an insurance policy. Recision is a retroactive remedy, by which the rights and obligations of all parties under the policy are abrogated, as if the policy had never been issued. Cancellation is a prospective remedy; it terminates the rights and obligations of the parties in the future. *Klopp v. Keystone Insurance Companies*, 528 Pa. 1, n. 6, 595 A.2d 1, n. 6 (1991). Should the policy of insurance at issue be rescinded, appellant would have no legal obligation to respond to the demands for coverage made by appellees as a result of the September 23, 1989 automobile accident.

The right of an insurance company to rescind a contract of automobile insurance was never in doubt prior to the passage of Act 78. *See, Safeguard Mutual Insurance Co. v. Huggins,*

2. Neither Bryan Lake nor Kevin Stover appealed the decision of the Superior Court, which affirmed the order of summary judgement against them and in favor of appellant. The order of the trial court entering summary judgment against Lorraine Stover was reversed by the Superior Court.

241 Pa.Super. 382, 361 A.2d 711 (1976).[3] However, following the adoption of Act 78 the insurance industry's right to rescind a contract of automobile insurance came under severe scrutiny.

Act 78 was enacted as remedial legislation directed at correcting the imbalance in the relative bargaining positions of the insurer and insured. One of the obvious areas of concern was the widespread practice of insurers rescinding contracts of insurance without notice, thus leaving the insured without coverage, and without time to obtain coverage. *See generally,* Leavitt, *Liability Insurance Crisis: The Regulatory Response,* 9 Dick.L.R. 919 (1987) (discussing the governmental response to the commercial crisis created by mass cancellations of insurance without prior notice). In response to this problem in the insurance industry, the Legislature set forth specific methods for termination of insurance contracts by the prospective means of cancellation and non-renewal, as opposed to the retroactive remedy of recision.

Thus, the question which this Court has wrestled with following the passage of Act 78 is whether the remedies as set forth in the Act are the exclusive means by which an insurance policy may be terminated. This court has considered this question in three instances since the promulgation of Act 78. *Metropolitan Property and Liability Ins. Co. v. Insurance Commissioner (Bonnie Beck),* 517 Pa. 218, 535 A.2d 588 (1987) (hereinafter *"Bonnie Beck "*), *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner and Miller,* 525 Pa. 306, 580 A.2d 300 (1990) (hereinafter *"Miller"*), and *Klopp v. Keystone Insurance Companies,* 528 Pa. 1, 595 A.2d 1 (1991) (hereinafter *Klopp*).

Before reviewing these decisions, it is helpful to review the verbiage of Act 78 relevant to our inquiry. 40 P.S. § 1008.4, provides as follows:

**Cancellation, grounds**

3. The *Huggins* case held that an insurance company properly could seek relief in equity to rescind a contract of insurance induced by fraudulent misrepresentations of the insured. The holding reflected the law as it had always existed prior to the passage of Act 78.

No insurer shall cancel a policy except for one or more of the following specified reasons:

(1) Nonpayment of premium;

(2) The driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period; the applicability of this reason to one who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer thereafter excluding such individual from coverage under the policy, but not for canceling the policy; or

(3) A determination that the insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by the insurer.

This Court first addressed whether an insurance company retains the right to rescind a policy of automobile insurance, following the passage of the above quoted portion of Act 78, in *Bonnie Beck*. *Bonnie Beck* was a plurality decision, with Mr. Justice McDermott authoring the Opinion Announcing the Judgment of the Court.[4]

*Bonnie Beck* considered the appeals of two Pennsylvania insurance companies. In each case the insurance company had rescinded a policy of insurance upon discovering material misrepresentations of fact made by the respective insured parties regarding their driving history. Each insured appealed the recision to the Insurance Commissioner, asserting that the termination provisions of Act 78 provided the only available means by which an insurance company could sever its relationship with an insured. The Insurance Commissioner ruled in favor of the insured in each case. On appeal to the

4. Only six justices participated in the decision of *Bonnie Beck*. The opinion of Mr. Justice McDermott was joined by Mr. Justice Zappala with Mr. Justice Larsen concurring in the result. A concurring opinion was authored by Chief Justice Nix, and joined by Messrs. Justices Flaherty and Papadakos. Former Justice Hutchinson did not participate in the decision.

Commonwealth Court, the decisions of the Insurance Commissioner were affirmed. This Court granted Allowance of Appeal and consolidated the two cases for disposition.

The Opinion Announcing the Judgment of the Court held that Act 78 evidences a clear legislative intent to abrogate the practice of insurance companies unilaterally rescinding policies of insurance; and requires that insurance companies terminate insurance coverage only via the specific prospective provisions for cancellation and non-renewal set forth in the Act. This conclusion stemmed from an analysis of the general purpose of legislation, along with the newly added subsection § 1008.4(3) which specifically addressed cancellation upon misrepresentation of material fact, i.e., fraud. Of particular note, was the fact that this subsection was added to the legislation following the opinion in *Huggins, supra.*[5]

The concurring opinion agreed that recision was inappropriate in the two specific cases involved in *Bonnie Beck.* The concurrence, however, reached that conclusion by finding that the misrepresentations made by the insured were not material to the losses sustained by the insurer. The Justices in concurrence did not agree that Act 78 had abrogated the common law right of recision in every instance.

This Court next reviewed the issue of recision versus cancellation in *Miller. Miller* did not deal with a claim under Act 78 rather it involved a claim under the Unfair Insurance Practices Act (UIPA), 40 P.S. § 1171.1 et seq. In *Miller*, Metropolitan Insurance Co. had rescinded Mr. Miller's home owner's policy upon discovering that he failed to inform them of three prior fire losses on his property which had occurred within the five years preceding his application for that insurance. Mr. Miller contested the recision under the procedures of the UIPA before the Insurance Commissioner. The Insurance Commissioner held that Metropolitan could only terminate the

5. Following the decision in *Huggins,* the legislature amended Act 78 to include subsection § 1008.4(3) (as set forth infra) to specifically include fraud in the inducement as a basis to *cancel* an insurance policy. As noted earlier, cancellation has a profoundly different effect upon the insurer's legal obligations under the policy than does recision.

policy through cancellation or non-renewal, not by recision. This decision was sustained by the Commonwealth Court. However, on appeal to this Court the decision was reversed.

In reversing the lower tribunals, this Court found that the misrepresentations made by Miller were in fact material to the risk undertaken by the insured. The Court further found that *unlike* Act 78, the UIPA specifically excluded instances of fraud in the inducement from its provisions governing cancellation of policies. Thus, in the absence of specific language in the UIPA addressing termination of policies induced by fraud, the Court reasoned that the common law remedy of recision would still be available to the insurer.[6]

█ The most recent decision of the Court relevant to the impact of Act 78 upon the recision of an insurance policy was *Klopp*. In *Klopp*, Keystone Insurance Company accepted an application for automobile insurance from the Klopps and issued a binder to them on February 7, 1985.[7] The very next day Mrs. Klopp was involved in an automobile accident. On April 4, 1985, 57 days after acceptance of the application, Keystone rescinded the policy and the binder, and returned the premium payment. Keystone had discovered that the Klopps failed to disclose two prior speeding violations and a prior automobile accident, information material to the risk insured. On cross motions for summary judgment the trial court found that recision was not a remedy available to Keystone under Act 78. The Superior Court affirmed. This Court reversed.

The decision in *Klopp* turned on the particular facts of that case. The Court did not directly address whether the legislature intended to exclude the remedy of recision in all instances

6. Under the UIPA improper cancellation is listed as an unfair trade practice, with this proviso: "unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company." 40 P.S. § 1171.5(9).

7. It is common practice in the insurance industry to issue a binder. A binder offers temporary protection for the insured pending the investigation of the risk by the insurance company until a formal policy of insurance is issued. *See, Black's Law Dictionary,* 6th Edition, 1990.

when they enacted Act 78. Instead, the case was resolved solely by reference to § 1008.6 of the Act, which provides: *"[n]othing in this act shall apply: ... [t]o any policy of automobile insurance which has been in effect less than 60 days."* Thus, in *Klopp* the Court reasoned that, even if the legislature intended to limit the manner of termination of insurance contracts solely to the methods of cancellation set forth in Act 78, the Act itself offers the insurance industry a 60 day grace period before its remedial terms become effective. Therefore, as Keystone was outside the parameters of Act 78 when on the 57th day after issuance of the policy it rescinded same, the recision is unaffected by the terms of Act 78.

▮ Admittedly, the *Klopp* decision begged the question of whether the termination provisions of Act 78 were intended to encompass the sole means of severing the relationship between the insurer and insured. However, having now reviewed all our previous decisions on this subject, we are compelled to conclude that an insurance company may only avail itself of the remedy of recision within the 60 day period before the terms and conditions of Act 78 become effective. After the 60 day period only the prospective remedies as set forth in the Act may be utilized to cancel an automobile insurance policy.

Act 78 is a piece of remedial legislation, the object of remediation being practices of the insurance industry which unfairly disadvantage the average consumer. In attempting to regulate the industry, the legislature focused upon "the disparate bargaining positions between insurance companies and individuals." *Bonnie Beck,* 517 Pa. at 224, 535 A.2d at 591. One of the primary factors in this disparity of bargaining positions, is the fact that operators of motor vehicles in Pennsylvania are required by law to carry automobile insurance[8]. Thus, the insurance industry holds a virtual monopoly

8. See, *Proof of Financial Responsibility,* 75 Pa.C.S. § 1781, et seq., Act of Feb. 12, 1984, P.L. 26 No. 11 § 3, effective Oct. 1, 1984. As amended Feb. 7, 1990, P.L. 11 No. 6, § 13, effective July 1, 1990.

over the pool of consumers. In this context it is easy to understand why the legislature found it necessary to limit severely the insurance industry's use of the common law remedy of recision, and instead require termination of coverage through only the prospective remedies of cancellation and non-renewal. Obviously, the requirement that all motorists obtain automobile insurance explains why Act 78 sets greater restrictions on the termination of automobile insurance policies than the UIPA requires for the termination of homeowners liability insurance. *See, Miller.*

However, with the passage of Act 78, the insurance industry was not completely deprived of the remedy of recision. As realized by the Court in *Klopp,* the remedial constraints of Act 78 do not come into play until 60 days after the issuance of an insurance policy. Thus, the insurance industry has a window within which they can investigate the necessary risks attendant upon their agreement to issue insurance in each particular case. Once that window has been closed, however, the parties are bound by the parameters of Act 78.

In the instant case, the appellant complains that the 60 day window is of no moment. The type of fraud perpetrated in this case was impossible to discover through normal channels. Appellant is correct. Appellant's grievance is of significant import; it has never been the object of the law to allow someone to benefit from their illegal conduct. In fact, such an outcome would be absurd. *See, Klopp,* 528 Pa. at 8, 595 A.2d at 4. Although the perpetrators of the fraud at issue have not appealed from the order of summary judgment which essentially rescinded the policy as to them, by the very nature of appellant's claim we are constrained to address the question. In asking this Court to declare the policy at issue void *ab initio,* appellant necessitates consideration of its right to rescind this contract as to *all* parties.

■ We find, as a matter of common sense and public policy, that it would indeed be absurd to interpret Act 78 as

(without proof of insurance a motorist is subject to loss of operating privileges).

permitting a person to financially benefit from his own illegal act of fraud. Therefore, an insurer may rescind a policy of insurance as to the actual perpetrator of the fraud, where the fraud could not reasonably have been discovered within the 60 day period immediately following issuance of the policy; limited to those instances where the undiscovered fraud was of such a nature that it is clear that an insurer would never have accepted the risk inherent in issuing the policy. To find otherwise would be to interpret Act 78 as intending an absurd result. *See*, 1 Pa.C.S. § 1922(1) "The General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."

Automobile insurance is not issued solely for the benefit of the individual purchaser. Motorists carry insurance not only for their own protection, but also, for the benefit of third parties who may suffer through the negligence of the insured motorist. This concept of providing for the foreseeable consequences of driving in today's society is certainly one of the most important policy considerations prompting the remedial legislation in this area. *Klopp*, 528 Pa. at 9, 595 A.2d at 5 (concurring opinion).[9] The distribution of financial risk is a legitimate public policy concern. In the area of automobile insurance the industry benefits by the fact that the consumers must purchase insurance, therefore, the insurance industry has a guaranteed market. Although the consumer must buy, the consumer benefits from the knowledge that he cannot be denied coverage without good cause and that coverage may only be terminated prospectively, thus, allowing an opportunity to find alternate insurance. This trade off obviously has shortcomings. In this case appellant complains, justifiably, that it was tricked into assuming a risk that it would never have assumed knowingly; and, that the trickery could not have reasonably been discovered within the 60 day period immediately following issuance of the policy. That trickery is

**9.** Obviously, automobile insurance is required for all motorists because of the risks attendant to third parties by the possible negligence of any motorist. *See, Motley v. State Farm Mutual Insurance*, 502 Pa. 335, 466 A.2d 609 (1983).

now causing appellant a significant loss. Appellant, however, has been paid all the premiums for the policy. The parties who committed the fraud have been precluded from benefitting from their wrongdoing. The appellees, however, should not be left to suffer. Although on the surface it appears harsh to force the insurance company to abide by a contract procured by fraud, it would be beyond harsh to preclude the third party appellees, who are innocent of trickery, and injured through no fault of their own, from receiving protection under the policy. Weighing all the factors, we are compelled to conclude that it is clearly the intent of the remedial legislation known as Act 78 to preclude recision of an insurance policy, as to third parties, beyond the 60 day grace period within the Act itself.

For the reasons set forth, we affirm the decision of Superior Court and remand this case to the trial court for further proceedings consistent with this opinion. Jurisdiction is relinquished.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

ZAPPALA, J., files a concurring opinion in which CASTILLE, J., joins.

NIX, C.J., files a concurring and dissenting opinion in which FLAHERTY, J., joins.

ZAPPALA, Justice, concurring.

I agree with the Majority that an insurer does not have the ability to rescind a policy of insurance after the sixty day period immediately following the issuance of the policy. I write separately, however, to note my disagreement with the exception carved into this rule that the insurer can, beyond the statutory sixty day period, rescind the insurance policy with respect to the actual perpetrator of the fraud where the fraud could not reasonably have been discovered within the statutory period.

For purposes of this case, this conclusion is mere obiter dictum, as summary judgment was granted against the perpetrators of the fraud and such decision was not appealed. More importantly, this conclusion is contrary to Act 78. As I stated in my concurring opinion in *Metropolitan Property and Liability Insurance Co. v. Insurance Commissioner and Miller*, 525 Pa. 306, 580 A.2d 300 (1987),

> [T]he General Assembly made clear in Act 78 that even if an insurance carrier could establish a material misrepresentation in the procurement of that insurance, the exclusive remedy was cancellation of the automobile insurance policy. Prior to this amendment, material misrepresentation was not included in Act 78 as a basis for termination of the policy. With this amendment, the Legislature clearly preempted and limited the available remedies to an automobile insurance carrier. It also appears that the amendment was in direct response to the judiciary's refusal to restrict an automobile insurance carrier's remedies without a clear legislative intent. *See Safeguard Mutual Insurance Company v. Huggins*, 241 Pa.Super. 382, 361 A.2d 711 (1976).

*Id.*, 525 Pa. at 314–315, 580 A.2d 300 (1990).[1]

In conclusion, if an insurer fails, for whatever reason, to rescind the policy during the sixty-day period immediately following its issuance, the only remedy remaining to the insurer is that of termination of coverage via the specific prospective provisions for cancellation and non-renewal set forth in the Act. To the extent that Act 78, thus interpreted, may result in insurance companies being required to pay claims arising under fraudulently procured policies, the cure, if such is necessary, lies with the General Assembly.

CASTILLE, J., joins in this Concurring Opinion.

---

1. I am also not persuaded by the Majority's notion that motorists carry insurance for the benefit of third parties. Only the insurer and insured have duties and obligations arising from the insurance contract. *See Johnson v. Beane*, 541 Pa. 449, 454 n. 3, 664 A.2d 96, 99 n. 3 (1995).

NIX, Chief Justice, concurring and dissenting.

I agree with the majority that an insurer should be permitted to rescind a fraudulently obtained insurance policy beyond the sixty-day period following issuance of the policy provided the fraud could not reasonably have been discovered during those sixty days and the insurer would not have assumed the risk of issuing the policy had the nature of the misrepresentations been known. However, I can not agree with the majority's position that such a policy may be rescinded as to the perpetrator of the fraud but not as to third parties.

There is no basis for rescinding a contract as to the parties while allowing non-parties to benefit from that contract. Once a contract is rescinded it is treated as though it never existed. "A rescission amounts to the unmaking of a contract and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract." *Klopp v. Keystone Ins. Cos.*, 528 Pa. 1, 7–8 n. 6, 595 A.2d 1, 4 n. 6 (1991) (quoting *Metropolitan Property and Liab. Ins. Co. v. Commonwealth of Pennsylvania, Ins. Comm'r*, 97 Pa.Commw. 219, 223, 509 A.2d 1346, 1348 (1986), *aff'd. by an equally divided court*, 517 Pa. 218, 535 A.2d 588 (1987)). The result reached by the majority combines the remedies of rescission and cancellation in order to allow relief to innocent parties who are injured at the hands of a driver who fraudulently obtained insurance. In my view, the proper remedy for such innocent victims is through their own insurance carrier if they were insured at the time of the accident or through the Assigned Claims Plan, 75 Pa.C.S. §§ 1751–1757, if they were not. *See Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995).

Because I agree with the majority's position that under certain circumstances an insurance policy may be rescinded beyond the sixty days following issuance of the policy, I would remand this matter to determine if these circumstances exist in the instant case. However, I dissent from the majority's conclusion that if the requirements necessary to rescind the

378

contract are met, the contract may be rescinded only as to the parties who committed the fraud but not as to the injured third parties.

FLAHERTY, J., joins in this concurring and dissenting opinion.