**Masco Contractor Services East Inc. v. Hilliard**

*Francis J. Deasey,* for plaintiff.
*Robert J. Magee,* for defendants.

MILLIN, *P.J.,* October 25, 2005—Before the court for determination is the preliminary objection of

George Caldarelli, administrator of the estate of Nicholas Caldarelli, deceased, to the complaint in this matter seeking declaratory judgment. The declaratory judgment complaint in Count I asks the court to interpret provisions of an insurance policy and a subsequent amendment thereto and to declare that the amendment is valid retroactive to the inception of the policy. The insured and the insurer agreed to the amendment of the insurance policy to retroactively eliminate coverage of an employee who allegedly caused an accident resulting in death and permanent disability while driving drunk. The preliminary objection before the court is a demurrer to Count I of the complaint which asks the court to dismiss the Count. The venue in Forest County for this declaratory judgment action is proper pursuant to Pennsylvania Rule of Civil Procedure 1006(a)(1) as defendant Scott Hilliard is currently an inmate/resident of the State Correctional Institution located in Forest County.

Both Masco Contractor Services and Old Republic Insurance Company are the named defendants in two underlying complaints filed in the Court of Common Pleas of Northampton County concerning a tragic accident that occurred along Route 145 in Upper Saucon Township, Lehigh County. On the evening of October 10, 2003, Nicole Nemeth, along with passenger Nicholas Caldarelli, were traveling southward on Best Avenue in Lehigh County when a 1995 Ford F-250 pickup truck owned by Masco and operated by Scott Hilliard crossed a double yellow centerline causing a head-on collision between the two vehicles. The collision resulted in the death of Mr. Caldarelli and permanently disabled Ms. Nemeth. It was later determined that Mr. Hilliard, a

Masco employee, was under the influence of alcohol at the time of the accident.

A business automobile insurance policy identified as policy no. *********, was purchased by Masco from Old Republic in June of 2003. The policy provides that "we will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Form CA 00 01 10 01, at p. 2.) In addition to this provision, the policy also has restrictive language which states that Old Republic has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." (CA 00 01 10 01, at p. 2.)

With regard to individuals covered under the June 2003 policy, a "broadening endorsement" was included under Form I which provided for the policy to apply to "additional insured." Under this portion of the policy, an "additional insured" is defined as "directors, executive officers *and employees* with respect to the use of any 'insured' vehicles or with permission of the named insured." (Form I). (emphasis added) Under this broadening endorsement, the defendant Scott Hilliard, the driver of the vehicle, would be considered an "additional insured" as an employee of Masco. The policy contains a provision permitting changes which provides:

"This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived

only by endorsement issued by us and made a part of this policy." (IL 00 17 11 98.)

The complaint alleges at paragraph 32 that "[Masco] amended the primary policy by subsequent endorsement, issued after the accident involving Ms. Nemeth and Mr. Caldarelli to delete Form I." The copy of the endorsement filed with the complaint as part of exhibit A is unsigned and undated, but accepting as true the well-pleaded facts of the complaint, the endorsement was entered by agreement of Masco and Old Republic *after* the accident of October 10, 2003. In addressing *preliminary objections,* the court must accept as true all well-pleaded, material facts and any reasonable inferences that we may draw. *Duquesne Light Co. v. Department of Environmental Protection,* 724 A.2d 413, 416 (Pa. Commw. 1999). The effect of this amendment would be to eliminate the defendant Scott Hilliard as an "additional insured" and the insurer would have no liability for the defendant Scott Hilliard unless the defendant Scott Hilliard fit the definition of "insured" as set forth in the primary policy.

As with other contracts, a court's duty in interpreting an insurance policy is to ascertain the intent of the parties as manifested in the language of the agreement. *Travelers Casualty & Surety Co. v. Castegnaro,* 565 Pa. 246, 251, 772 A.2d 456, 459 (2001). Accordingly, courts must "give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Prudential Property & Casualty Insurance Co. v. Colbert,* 572 Pa. 82, 87, 813 A.2d 747, 750 (2002). Questions of public policy, however, should be scrutinized with utmost care so as not to usurp clearly established prin-

ciples and standards relating to insurance law. As such, "public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." *Burstein v. Prudential Property & Casualty Insurance Co.,* 570 Pa. 177, 182-83, 809 A.2d 204, 207 (2002). The Pennsylvania Supreme Court stated in *Central Dauphin School District v. American Casualty Company,* 493 Pa. 254, 426 A.2d 94 (1981) that

"A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms. (Quoting Restatement (Second) of Contracts, section 320(1) (now Restatement (Second) of Contract 2d, Session 178(1)).)" *Central Dauphin School District,* 493 Pa. at 258, 426 A.2d at 96.

We must, therefore, determine whether as a matter of law the interest in enforcing the agreement of the insured and the insurer to retroactively alter the provisions of the insurance contract is clearly outweighed in the circumstances by a public policy then in effect against the enforcement of the clause.

We find that public policy expressed in the Motor Vehicle Financial Responsibility Law, which is codified under 75 Pa.C.S. §1701 et seq. "The purpose of the Motor Vehicle Responsibility Law is to require owners

of registered vehicles to be financially responsible . . . The public policy enunciated by the Motor Vehicle Financial Responsibility Law, . . . is to foster financial responsibility for damages caused to individuals on the roadways, *not to promote uninsurance.*" *Donegal Mutual Insurance Co. v. Long,* 387 Pa. Super. 574, 586-87, 564 A.2d 937, 943-44 (Pa. Super. 1989). (emphasis added) In *Donegal,* the court cited with authority *Couch On Insurance 2nd* (rev. ed.) §45:733 and stated:

"A financial responsibility act is remedial in nature and is therefore to be liberally construed to carry out the declared public policy and achieve the legislative objective. Otherwise stated, liability insurance policies executed, filed, and approved pursuant to the provisions of such statutes will be liberally construed so as to attain the legislative intent to protect the general public from loss by injury or death caused by the negligence of the insured, his agent, his servant or his independent contractor." *Donegal,* 387 Pa. Super. at 586 n.4, 564 A.2d at 944 n.4.

In *Donegal,* the Superior Court further quoted the Missouri Court of Appeals in the case of *Allstate Insurance Co. v. Sullivan,* 643 S.W. 2d 21 (Mo.App. 1982) in which the court stated:

"While it may be readily conceded that automobile liability insurance policies are contracts, it must also be recognized that they carry public considerations reaching beyond simply the rights of the parties to the contract. It is the public policy of this state to assure financial remuneration for damages sustained through the negligent operation of motor vehicles on the public

highways of this state not only by the owners of such automobiles, but also by all persons using such vehicles with the owner's permission, expressed or implied. The manifestation of this public policy is found in the Motor Vehicle Safety Responsibility Law." *Donegal,* 387 Pa. Super. at 587-88, 564 A.2d at 944.

Simply put, Masco and Old Republic wish to avoid providing coverage for an individual who violated the terms of an insurance policy when he operated a vehicle under the influence of alcohol. While the motive to deny coverage is understandable, such an action would undoubtedly violate the public policy concerns expressed in *Donegal.* In *Donegal,* the Superior Court was faced with a similar scenario as it was forced to decide whether to invalidate insurance coverage under a rental agreement where the lessor had caused an accident while under the influence of alcohol. *Id.* at 578-79, 564 A.2d at 939-40. The *Donegal* court held that, due to widely accepted notions of public policy, "insurers of automobile rental companies should not be permitted to avail themselves of a lessee's violation of a rental agreement for the purpose of escaping the duty to indemnify persons covered by the policy for liability for injuries to innocent third parties." *Id.* at 589, 564 A.2d at 945. So too, an employer should not be permitted to vitiate an insurance policy because an employee violated the agreement by operating a company vehicle under the influence of alcohol.

In spite of the thin line a court must walk when reviewing questions of public policy, this case presents a situation where the enforcement of a "retroactive amendment" would be in direct contradiction to gener-

ally accepted public policy and principles of insurance under existing Pennsylvania precedent. Rather than complying with the definition and broadening endorsement agreed to in the June 2003 execution of the policy, the plaintiffs urge the court to give effect to the subsequent endorsement of the policy which would eliminate the driver of the vehicle as an "additional insured." To do so would clearly contravene the public policy embodied in the Motor Vehicle Financial Responsibility Law laid out in *Donegal.*

Moreover, the Pennsylvania Supreme Court in *Erie Insurance Exchange v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996), explained the import of recognizing the rights of third party motorists as a policy ground when it grappled with the common-law issue of policy rescission. In its analysis, the Supreme Court noted that "the distribution of financial risk is a legitimate public policy concern." *Lake,* 543 Pa. at 374, 671 A.2d at 686. Accordingly, the effect that automobile insurance has on third parties cannot be overstated as "automobile insurance is not issued solely for the benefit of the individual purchaser." *Id.* at 374, 671 A.2d at 686. The *Lake* court went on to reason that: "[m]otorists carry insurance not only for their own protection, but also, for the benefit of third parties who may suffer through the negligence of the insured motorist. This concept of providing for the foreseeable consequences of driving in today's society is certainly one of the most important policy considerations prompting the remedial legislation in this area." *Id.* at 374, 671 A.2d at 686.

For the foregoing reasons, the court enters the following order:

## ORDER

And now, October 25, 2005, the defendant Caldarelli's preliminary objection is sustained. Count I of the complaint is dismissed with prejudice.

A status conference is scheduled for the ___ day of ___, 2005 at ___ a.m./p.m.