James J. DELANEY and James Clarke, Appellants

v.

CITY OF WILKES–BARRE.

Commonwealth Court of Pennsylvania.

Argued March 11, 2008.
Decided May 6, 2008.

Walter T. Grabowski, Wilkes–Barre, for appellants.

Donald H. Brobst, Wilkes–Barre, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

James J. Delaney (Delaney) and James Clarke (Clarke) (collectively, Appellants) appeal an order of the Court of Common Pleas of Luzerne County (trial court), which granted summary judgment to the City of Wilkes–Barre (City). At issue are Ordinances passed by the City, without collective bargaining, that allow City firefighters to purchase time spent working in another capacity with the City for their firefighters' pension ("buy-back"). Appellants elected to participate in the buy-back. As a result of the enforcement of an order of the Pennsylvania Labor Relations Board (PLRB), the Ordinances were rescinded, and the City refunded the buy-back payments to Appellants, who unsuccessfully sought a declaratory judgment that they be entitled to the benefits of the buy-back provisions. On appeal, Appellants contend that the trial court erred in granting the City summary judgment because: (1) the Ordinances providing for the buy-backs were not *void ab initio* solely because they were enacted without collective bargaining; (2) the City's repeal of the Ordinances did not operate retroactively; and (3) the New Collective Bargaining Agreement and the Settlement Agreement do not operate as a waiver of Appellants' claims.

The facts, as stipulated, are as follows. Appellants are residents of the City, and they are presently employed by the City as firefighters. Appellants are participants, members, or beneficiaries of the City's Firemen's Pension Relief Fund (Pension). The City is an employer within the meaning of Act 111[1] and the administrator of the Pension through the Bureau of Firemen's Relief Pension Fund Board of Directors (Pension Board). At all relevant times, the City and the City's Firefighters' Union, Local No. 104 International Association of Firefighters (Union),[2] were parties to a collective bargaining agreement (CBA) setting forth the wages, hours, terms, and conditions of employment of the members of the Collective Bargaining Unit (Unit). Article 21 of the CBA specifically covers the subject of pensions for the City's firefighters, including Appellants.

Delaney was employed by the City as a paramedic from 1981 until 1993. In 1993, Delaney became a firefighter for the City. From 1993 to 2000, Delaney worked in different capacities as a firefighter. During that time, Delaney was a member of the Unit and a member of the Union. In 2000, he became the Fire Chief and, as such, was neither a member of the Unit, nor a member of the Union. In January 2004, Delaney was demoted to Fire Captain and, thus, became a member of the Unit; however, Delaney did not rejoin the Union. Delaney has been subject to the terms of the CBA at all relevant times, except when Delaney was the Fire Chief.

Clarke was employed by the City in the Tax Office and Finance Office from 1977 until 1982. Clarke became a City firefighter on November 1, 1982. From 1982 until the present, Clarke held different positions as a firefighter. At all times

**1.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

**2.** The Union is a labor organization within the meaning of Section 3(f) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.3(f).

during his employment with the City, Clarke has been a member of the Unit and a member of the Union. Thus, at all relevant times, Clarke has been subject to the terms of the CBA.

The CBA does not permit Unit members to "buy-back" time served in another City pension fund or, in other words, does not allow the purchase of service credit. However, on or about December 12, 2001, the City adopted Ordinance No. 10 of 2001 and Ordinance No. 12 of 2001 (collectively, the Ordinances). The net effect of the Ordinances was to permit, for the first time, members of the Unit to buy-back all of the time served as City employees and to participate in another City pension fund. This modified the Pension to permit employees to retire earlier than otherwise scheduled.

On or about January 11, 2002, Appellants elected to participate in the buy-back by agreeing to pay a certain amount of money to the Pension and by making a down payment.

Because the Ordinances were enacted without collective bargaining, the Union filed an unfair labor practice charge against the City with the PLRB on March 29, 2002. On December 4, 2002, the PLRB issued a proposed Decision and Order, which declared that the City had committed an unfair labor practice by enacting the Ordinances without collective bargaining and directed the City to rescind the Ordinances.

The PLRB's Order became final, and the Union filed a Petition for Enforcement of that Order with the trial court. The trial court then issued an order, dated August 5, 2003, directing the City to comply with the PLRB's Order and to rescind the Ordinances. On August 19, 2003, the City Council enacted Ordinance No. 14 of 2003, which rescinded and repealed the Ordinances. On April 23, 2004, the City and the Union entered into a Settlement Agreement, Paragraph 10 of which provides:

> The City of Wilkes–Barre will discontinue the practice of allowing Firefighters to purchase time spend [sic] working in another capacity with the City of Wilkes–Barre into the Firefighters' Pension Fund. Any firefighters who have purchased such time shall be refunded their contributions; time purchased shall not be credited toward a pension in the Firefighters' Pension Fund. No further contributions shall be permitted to be made.

(Stipulated Facts, Trial Ct. Op. at 6–7, ¶ 27.)

On October 2, 2004, the Pension Board refunded Appellants' buy-back payments, plus interest, and the City ceased making deductions from the Appellants' paychecks for the balance due on the buy-backs.

On or about February 28, 2005, the City and the Union entered into another CBA for the period of January 1, 2004 to December 31, 2010 (the Subsequent CBA). Article 21, Section 8 of the Subsequent CBA is identical to Paragraph 10 of the Settlement Agreement.[3]

On November 4, 2004, Appellants filed a Complaint. In Count I of the Complaint,

---

3. Article 21, Section 8 of the Subsequent CBA provides:

> The City of Wilkes–Barre will discontinue the practice of allowing Firefighters to purchase time spend [sic] working in another capacity with the City of Wilkes–Barre into the Firefighters' Pension Fund. Any firefighters who have purchased such time shall be refunded their contributions; time purchased shall not be credited toward a pension in the Firefighters' Pension Fund. No further contributions shall be permitted to be made.

(Stipulated Facts, Trial Ct. Op. at 7, ¶ 31.)

Appellants requested a declaratory judgment that: (1) the Ordinances were valid and in full force and effect from December 22, 2001 to August 19, 2003; (2) the City is required to resume payroll deductions and/or accept payments from Appellants until the necessary amounts for the buy-backs have been paid in full; (3) Appellants have purchased or bought-back all of the time during which they served as City employees; and (4) Appellants are entitled to all benefits and may exercise all rights to which they would have been entitled or which they could have exercised pursuant to the Ordinances. In Count II of the Complaint, Appellants requested that a judgment of mandamus be entered commanding the City to: (1) honor the buy-backs; (2) accept Appellants' payments and/or make appropriate payroll deductions of the buy-backs; (3) credit appropriate service years in accordance with the buy-backs; and (4) permit Appellants to exercise all rights to which they would have been entitled or which they could have exercised, including the right or opportunity to participate in an early retirement program.

The parties completed discovery and subsequently filed a Stipulation of Facts. The parties then each filed Motions for Summary Judgment. The trial court granted the City's Motion for Summary Judgment and denied Appellants' Motion for Summary Judgment. Appellants then filed a timely Notice of Appeal to this Court, and the trial court issued an opinion pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure. In its Rule 1925 Opinion, the trial court held that the Ordinances were never of any force or effect and, thus, the buy-backs were invalid when enacted. Because of this, the trial court held that Appellants had no rights for the trial court to enforce. Accordingly, the trial court held that mandamus could not lie because Appellants had no right to relief, and they did not show a corresponding duty of the City to perform.

On appeal to this Court,[4] Appellants argue that: (1) the Ordinances were not *void ab initio;* (2) the repeal and rescission of the Ordinances did not operate retroactively; and (3) they are not bound by the Settlement Agreement between the City and the Union.

Appellants first argue that the trial court erred in relying on this Court's decision in *Township of Ross v. McDonald,* 60 Pa.Cmwlth. 306, 431 A.2d 385 (1981), to conclude that the Ordinances were *void ab initio.* They contend that the Ordinances did not breach the CBA at the time because the CBA did not prohibit buy-back provisions. Appellants assert that the enactment of the Ordinances did nothing more than give effect to its parity requirements by providing firefighters with the same rights as police officers. Moreover, Appellants contend that if the Ordinances were *void ab initio,* the Union would not have negotiated the City's non-recognition of the buy-backs as part of the Settlement Agreement and the Subsequent CBA. Appellants also assert that the fact that the City was required to repeal the Ordinances

**4.** This Court, in *Metropolitan Edison Co. v. Reading Area Water Authority,* 937 A.2d 1173, 1174 n. 2 (Pa.Cmwlth.2007), has succinctly stated our standard of review as follows:

[W]e will only disturb a trial court's order granting summary judgment where there has been an error of law or a clear abuse of discretion. Summary Judgment is properly granted when, viewing the record in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.* (citations omitted).

underscores the validity of the Ordinances between their effective date and the date they were repealed.

Appellants' arguments, however, are inconsistent with *Ross,* which requires us, like the trial court, to conclude that the Ordinances at issue here were *void ab initio.* In *Ross,* this Court held that the amendment to a township pension plan was *void ab initio* because it was adopted in *violation of a law* providing that a member of a governing municipal body may not vote on any question involving his own pecuniary interest if it is immediate, particular, and distinct from the public interest. *Id.,* 431 A.2d at 387–88. Similar to *Ross,* the enactment of the Ordinances here constituted a violation of Act 111, which provides that the subject of pensions is a mandatory subject of bargaining. Section 1 of Act 111, 43 P.S. § 217.1.[5] Further, the enactment of the Ordinances violated subsections (a) and (e) of Section 6(1) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.6(1)(a) and (e), which make it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of rights guaranteed under the PLRA and to refuse to bargain collectively with representatives of the employees. Hence, the trial court was correct in finding that the City does not have the legal authority to recognize the Pension buy-backs or to make deductions from Appellants' pay checks to fund the buy-backs.

Furthermore, in *City of Allentown v. Local 302, International Association of Fire Fighters,* 511 Pa. 275, 512 A.2d 1175 (1986), the Supreme Court stated that "[o]nce the matter is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement. An implicit power reserved by the public employer to unilaterally alter a bargained for provision in the contract would render the bargaining process established by Act 111 entirely illusory." *Id.* at 288, 512 A.2d at 1181. Accordingly, in *City of Allentown,* the Supreme Court found that the city breached the collective bargaining agreement between the union and the city and remanded the case to the trial court to determine an appropriate remedy. *Id.* at 289, 512 A.2d at 1182. Like *City of Allentown,* the CBA here was in effect at the time the Ordinances were enacted, and the CBA made reference to the Pension plan such that it would remain in effect for the life of the CBA. The Ordinances were, thus, enacted illegally and not only constituted an unfair labor practice, but also constituted a breach of the CBA. As the trial court explained, the rescission of the Ordinances, effectuated by Ordinance No. 14 and pursuant to the orders of the PLRB and the trial court, returned Appellants to the status quo as though the Ordinances were never enacted. The trial court was correct in holding that the City, thereafter, had no authority to continue to fund the buy-backs that had been declared illegal by the PLRB, because to do so would constitute

5. Section 1 of Act 111 states that:
   Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or ·more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.
   43 P.S. § 217.1.

an unfair labor practice and violate the PLRB's Order.

■ Next, Appellants argue that the repeal and rescission of the Ordinances did not operate retroactively because neither the orders of the PLRB and the trial court, nor Ordinance No. 14 had specific language providing for retroactive effect. Appellants rely on Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1926, which provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." *See also Morabito's Auto Sales v. Department of Transportation,* 552 Pa. 291, 295, 715 A.2d 384, 386 (1998) (stating that "[t]he general rule in determining whether a statute will be applied retroactively is as follows: 'Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage . . . .' " (quoting *Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 176, 305 A.2d 757, 761 (1973))).

■ This argument does not address the legal effect of the rescission of the Ordinances by Ordinance No. 14, which amounts to the unmaking of the Ordinances, and not merely a termination of the rights and obligations provided for thereunder. The word "rescission" is defined in Black's Law Dictionary as:

> [a] party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract; VOIDANCE. Rescission is generally available as a remedy or defense for a nondefaulting party and is accompanied by restitution of any par-

tial performance, thus restoring the parties to their precontractual positions.

Black's Law Dictionary, 1332 (8th Ed.2004). In *Wilkes–Barre Township v. Pennsylvania Labor Relations Board,* 878 A.2d 977 (Pa.Cmwlth.2005), this Court affirmed an order of the PLRB *rescinding* an ordinance and returning the parties to the *status quo ante* because the township, in enacting the ordinance, failed to bargain with the association under Act 111. Further, our Supreme Court, in *Erie Insurance Exchange v. Lake,* 543 Pa. 363, 367, 671 A.2d 681, 683 (1996), has stated that "[r]ecision is a retroactive remedy, by which the rights and obligations of all parties under the policy are abrogated, as if the policy had never been issued." Although *Erie Insurance Exchange* dealt with the rescission of an insurance policy, as opposed to rescission of an ordinance, the term rescission has the same meaning. Thus, rescission is an abrogation of all rights and responsibilities of the parties from the inception of the Ordinances and returns Appellants to the *status quo ante* as if the Ordinances were never enacted. Furthermore, we agree with the City that if this Court were to direct the City to allow Appellants to buy-back Pension service credits, we would be directing the City to do something that has been declared illegal as a violation of Act 111 and the PLRA by the PLRB, a decision previously enforced by the trial court, from which no appeal was taken. Accordingly, we conclude that the rescission of the Ordinances operated retroactively.

■ Finally, Appellants argue that the trial court erred in finding that they are bound by the Settlement Agreement and the Subsequent CBA for several reasons. Appellants contend that the Subsequent CBA and the Settlement Agreement violate public policy under the Public Em-

ploye Relations Act (PERA)[6] because they attempt to diminish a vested pension benefit. Appellants rely on *Krivosh v. City of Sharon*, 39 Pa.Cmwlth. 297, 395 A.2d 632, 634 (1978), for the proposition that their right to buy back pension credits vested, and a contractual obligation existed, which entitled them to the retirement benefit. Appellants cite to the Supreme Court's decision in *Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958), which summarized the law relating to the rights of a public employee in a retirement system:

1.  An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.

2.  An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

3.  An employe who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund.

*Id.* at 431–32, 141 A.2d at 203. Appellants contend that, even if they had not attained eligibility to receive a retirement allowance, the City still could not adversely affect their benefits without demonstrating that the change reasonably enhances the actuarial soundness of the Pension. Appellants contend that, since they have both attained eligibility, the fact that they have not actually retired is irrelevant and the City cannot diminish their benefits simply by contracting away their right to the buybacks.

We disagree with Appellants that *Harvey* requires this Court to permit them to buy-back their Pension credits. In *Harvey*, the Supreme Court reviewed the case law regarding pensions and determined that the Legislature may "not alter the terms of a pension contract without the consent of an employe" who has satisfied the conditions precedent for receiving a pension, but that "prior to an employe's fulfillment of such conditions the legislature could change or add to these conditions when such changes enhanced the actuarial soundness of the fund." *Id.* at 428, 141 A.2d at 201. In *Harvey*, there was a pension contract, the terms of which had been altered without consent of the employees.[7] That is not the case here. First of all, as previously discussed, also at issue here is the public policy underlying the PLRA and Act 111, which is that a party to a collective bargaining agreement can not unilaterally alter the terms of that agreement. It would be a violation of that public policy for us to sanction the unilateral action that occurred here. Because the buy-back provision was unlawfully enacted in violation of the PLRA and Act 111, pursuant to both order of court and order of the PLRB, the provision was rescinded and, so, *void ab initio*. Since that provision was void from its beginning, it could not create a binding Pension con-

---

6.  Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

7.  Specifically, in *Harvey*, during the course of Harvey's employment with Allegheny County, the Legislature substantially changed the retirement system of which Harvey was a member. These substantial changes included increasing contribution amounts, increasing the voluntary retirement age from fifty to sixty years, and changing the terms of receiving retirement benefits.

tract between Appellants and the City the way Appellants contend. In the absence of a binding Pension contract provision regarding the buy-back, there is no vested right. Even if, for the sake of argument, we would find that there was a Pension contract here with regard to the buy-back, there was consent to changing that provision. The Union, which was the collective bargaining agent for Appellants, entered into the Subsequent CBA and Settlement Agreement, and this operated as consent to any changes made.

The Union's authority to bind Appellants is supported by *Stollar v. Continental Can Co.*, 197 Pa.Super. 15, 176 A.2d 699 (1961), *rev'd on other grounds*, 407 Pa. 264, 268–69, 180 A.2d 71, 74 (1962), on which the trial court relied. There, the Superior Court stated that "[w]hen a recognized collective bargaining agent negotiates an agreement on behalf of the members of the union it represents, and that agreement is approved and ratified by those members, it is binding upon them all." *Id.*, 176 A.2d at 704. There, female employees brought an action to recover wages under the provisions of the Women's Equal Pay Law of 1947.[8] *Id.* at 701. The Superior Court upheld the trial court's decision to sustain preliminary objections to the complaint on the basis that the employees' wages were governed by the provisions of a CBA between the employer and their union and, thus, the CBA constituted a waiver of their rights to equal pay under the statute. *Id.* at 703. On appeal, the Supreme Court reversed finding that, even though the statute specifically provid-ed for waiver of equal pay claims, waiver could occur only after a claim had actually arisen, not *ab initio. Stollar,* 407 Pa. at 268–69, 180 A.2d at 74 (1962). On that basis, the Supreme Court concluded that the unequal pay provisions of the CBA violated the statute. Although the Supreme Court reversed the decision in *Stollar* on other grounds, the proposition on which the trial court relies is still good law. Further, we note that this legal principle, that a CBA is binding on union members when their agent negotiates an agreement on their behalf, which is later ratified, is well-settled in federal law.[9] In *Michota v. Anheuser–Busch, Inc.*, 755 F.2d 330 (3d Cir.1985), the court was presented with a challenge by pension fund participants to a CBA, which included a partial termination clause. This clause was bargained for by employee representatives and was later ratified and inserted into the CBA. The court concluded that the pension fund participants received sufficient notice of the contents of the clause based upon its inclusion into the CBA. The court emphasized that "[t]he ability of duly elected bargaining representatives to bargain effectively is dependent in part upon its ability to bind the employees it represents to the terms of a negotiated agreement." *Id.* at 335. The *Michota* court explained that although some employees may disagree with many of the decisions made by their union, which represents their interests, nonetheless, those employees are *bound by the terms bargained for by their union. Id.* at 335. *See also Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d

---

**8.** Act of July 7, 1947, P.L. 1401, *formerly* 43 P.S. §§ 335.1–.7, repealed by the Equal Pay Law, Act of December 17, 1959, P.L.1913, 43 P.S. § 336.9. Provisions on this subject may be found at 43 P.S. §§ 336.1–.10.

**9.** In the past, our Supreme Court has held that it was appropriate for the PLRB to find

decisions of the National Labor Relations Board (NLRB) instructive in interpreting comparable statutes of this Commonwealth. *See Pennsylvania Labor Relations Board v. Altoona Area School District,* 480 Pa. 148, 156, 389 A.2d 553, 557–58 (1978).

Cir.1999). Moreover, the proposition that union members are bound by a CBA that was negotiated on their behalf by an agent has been upheld by the Supreme Court in the realm of unemployment compensation (UC) cases. *See Department of Labor and Industry v. Unemployment Compensation Board of Review (Lybarger),* 418 Pa. 471, 478 n. 7, 211 A.2d 463, 466 n. 7 (1965) ("Claimants are bound by the agreement negotiated on their behalf by their union representatives.").[10]

Appellants also contend that the Union could not agree to waive Delaney's buy-back rights because he was not a member of the Unit when he exercised his buy-back rights in 2002. The Subsequent CBA provides that "[t]he City hereby recognizes that the Union is the sole and exclusive representative of all employees with the exception of the Chief and Deputy Chief of the Fire Department for the purposes of bargaining with respect to wages, hours of work, and working conditions." (Subse-

quent CBA, Article 2 "Recognition", at 4.) We disagree with Appellants' argument.

We note that, at all relevant times, Clarke was a member of the Unit. Furthermore, Delaney was and currently is a member of the Unit and, therefore, he is subject to the terms of the Settlement Agreement and the Subsequent CBA.[11]

Accordingly, we affirm the order of the trial court.

### ORDER

**NOW,** May 6, 2008, the order of the Court of Common Pleas of Luzerne County granting summary judgment in favor of the City of Wilkes–Barre in the above-captioned matter is hereby **affirmed.**

---

10. Appellants argue that the trial court erred in relying on unemployment compensation (UC) cases in determining that Appellants were bound by the Subsequent CBA and Settlement Agreement. (*See* Trial Ct. Op. at 8) (citing *Lybarger; Warner Co. v. Unemployment Compensation Board of Review,* 396 Pa. 545, 153 A.2d 906 (1959).) While we agree with Appellants that the holdings of the UC cases were based upon their particular facts and involved the UC law, the principle that employees are bound by the terms bargained for by their union is well-settled jurisprudence spanning both state and federal law.

11. Appellants also contend that the Union did not agree that Appellants would relinquish their buy-back rights under the Settlement Agreement or the Subsequent CBA; rather, the City, through the subsequent CBA, agreed that Appellants' contributions would be re-

funded and that the time purchased would not be credited toward the Pension. Appellants argue that neither the Settlement Agreement, nor the Subsequent CBA, imposed any duties or requirements on them regarding the buy-backs, such as specifically providing that firefighters who purchased time were waiving or relinquishing claims for increased Pension benefits based on those purchases.

Again, this Court does not accept Appellants' argument. It was the Union that brought the charges initially under the PLRA, which resulted in the orders requiring rescission of the buy-back provisions. It is clear that the orders of the PLRB and the trial court, Ordinance No. 14 of 2003, the Subsequent CBA, and the Settlement Agreement were designed to accomplish the complete rescission of the buy-back provisions and return all to the *status quo ante.*